GUNTHER *v.* BOARD OF COUNTY ROAD COMMISSIONERS OF CHEBOYGAN COUNTY.

COUNTIES—NOT LIABLE FOR NEGLIGENCE OF AGENT IN PERFORMING GOVERNMENTAL FUNCTION.

A county in performing maintenance work on a trunk line highway in pursuance of a contract with the State highway commissioner, by its board of road commissioners, under Act No. 19, Pub. Acts 1919, was performing a governmental function, and therefore is not liable for injuries caused by the negligent operation of a truck by one of its agents, in the absence of a statute creating such liability.

Error to Cheboygan; Shepherd (Frank), J. Submitted October 10, 1923. (Docket No. 80.) Decided December 19, 1923.

Case by Roy K. Gunther against the board of county road commissioners of Cheboygan county and another for personal injuries. On motion of defendants the action was dismissed. Plaintiff brings error. Affirmed.

*Homer H. Quay* and *Sprague & Shepherd,* for appellant.

*Ward I. Waller* (*Prentiss M. Brown,* of counsel), for appellees.

FELLOWS, J. Acting under the provisions of Act No. 19, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 4859 [2]), the State highway commissioner entered into a contract with the board of county road commissioners of Cheboygan county for the maintenance of the trunk line highways in that county during the year 1921. Under the act the county's share of the

On negligent or unlawful use of road as a defect within statute rendering county, town, or other political division liable for damages, see note in 22 A. L. R. 588.

cost of maintenance was 25 per cent. and the State's share 75 per cent. The contract provided for the payment of the bills by the county and the later reimbursement by the State of its share. On September 6, 1921, the plaintiff was seriously injured in a collision of his automobile with a truck owned by defendants, and used in such maintenance work upon the trunk line highways of the county, the truck being negligently operated by defendants' incompetent agent, and the accident occurring on one of the trunk lines of the county. He brings this action to recover for the damages to his machine and for his personal injuries, setting up in his declaration the details, a resumé of which is above given. Defendants filed a motion to dismiss in the nature of a demurrer, the principal grounds being that defendants were in the performance of a governmental function and therefore not liable. The trial judge held with defendants in their contention and dismissed the suit.

The accident was not occasioned by any defect in the condition of the highway and plaintiff does not and can not plant his right of recovery on Act No. 388, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 4367). His claim is based on negligence in the selection of an agent and negligence of such agent while performing work of maintenance of the trunk line system under a contract between the State highway commissioner and the defendant board of county road commissioners. If the status of the board is that of a private contractor plaintiff may recover. If the board is an arm of the State performing a governmental function plaintiff may not recover. The contract excludes any idea of profit to the county and we think the act itself excludes any idea of or right to profit by the county, district or township.

In determining whether an act is in the performance of a governmental function, the courts have on

occasions encountered difficulty in deciding which side of the line the facts of a particular case place it, but the underlying principles which guide are quite generally agreed upon. We may, therefore, with profit address ourselves to ascertaining and stating the general rule for our guidance, first considering a few of the many cases from other jurisdictions.

In *Bailey* v. *Mayor, etc., of New York*, 3 Hill (N. Y.), 531 (38 Am. Dec. 669), a leading and much cited case, it was said:

"But the distinction is quite clear and well settled, and the process of separation practicable. To this end, regard should be had, not so much to the nature and character of the various powers conferred, as to the object and purpose of the legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, political or municipal character. But if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation, *quoad hoc,* is to be regarded as a private company. It stands on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred."

An exhaustive review of the authorities will be found in *Hill* v. *City of Boston*, 122 Mass. 344 (23 Am. Rep. 332), and that court in *Bolster* v. *City of Lawrence*, 225 Mass. 387 (114 N. E. 722, L. R. A. 1917B, 1285), said:

"The difficulty lies not in the statement of the governing principles of law, but in their application to particular facts. The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be liability. That it may be undertaken voluntarily and not under compulsion of statute is not of consequence."

In *Maxmilian* v. *Mayor, etc., of New York*, 62 N.

Y. 160 (20 Am. Rep. 468), it was said by Justice Folger, speaking for the court:

"There are two kinds of duties which are imposed upon a municipal corporation: One is of that kind which arises from the grant of a special power, in the exercise of which the municipality is as a legal individual; the other is of that kind which arises, or is implied, from the use of political rights under the general law, in the exercise of which it is as a sovereign. The former power is private, and is used for private purposes (*Lloyd* v. *Mayor, etc., of New York,* 5 N. Y. 374 [55 Am. Dec. 347]). The former is not held by the municipality as one of the political divisions of the State; the latter is. In the exercise of the former power, and under the duty to the public which the acceptance and use of the power involves, a municipality is like a private corporation, and is liable for a failure to use its power well, or for any injury caused by using it badly. But where the power is intrusted to it as one of the political divisions of the State, and is conferred not for the immediate benefit of the municipality, but as a means to the exercise of the sovereign power for the benefit of all citizens, the corporation is not liable for nonuser, nor for misuser by the public agents."

And in *Hart* v. *City of Bridgeport,* 13 Blatchf. (U. S.) 289, it was said:

"The principal difficulty which courts have experienced, has been in ascertaining, clearly and accurately, the line of demarcation between public governmental duties and private or corporate duties, and has not been in the determination of the question, whether, for a refusal to discharge public duties, the corporation was or was not liable. Public duties are, in general, those which are exercised by the State as a part of its sovereignty, for the benefit of the whole public, and the discharge of which is delegated or imposed by the State upon the municipal corporation. They are not exercised either by the State or the corporation for its own emolument or benefit, but for the benefit and protection of the entire population. Familiar examples of such governmental duties are

the duty of preserving the peace, and the protection of property from wrong-doers, the construction of highways, the protection of health and the prevention of nuisances. The execution of these duties is undertaken by the Government because there is a universal obligation resting upon the Government to protect all its citizens, and because the prevention of crime, the preservation of health, and the construction of means of intercommunication are benefits in which the whole community is alike and equally interested."

That a distinction exists between the liability of cities many of which are acting under special charter and the liability of counties which are generally acting as an arm of the State is pointed out in many decisions. Judge Sanborn, speaking for the court of appeals of the eighth circuit, with the citation of numerous sustaining authorities in the case of *Madden* v. *Lancaster County*, 65 Fed. 188, said:

"The general rule of law in this country and in England is, and has been for more than a century, that while cities and municipal bodies, that voluntarily accept charters from the State to govern themselves, and to manage their own local affairs, are municipal corporations proper, and are liable for negligence in the care of streets and bridges, and in the discharge of like public duties (2 Dill. Mun. Corp. [3d Ed.] §§ 1017, 1018; *Barnes* v. *District of Columbia*, 91 U. S. 540, 550, 551, and cases cited), counties, townships, school districts, and road districts are not municipal corporations proper, and are not liable for such negligence. The latter, even when invested with corporate capacity and the power of taxation, are but *quasi*-corporations, with limited power and liabilities. They exist only for the purpose of the general political government of the State. They are the agents and instrumentalities the State uses to perform its functions. All the powers with which they are intrusted are the powers of the State, and the duties imposed upon them are the duties of the State; and inasmuch as the sovereign power is not amenable to individuals for neglect in the discharge of public duty, and cannot be sued for such neglect without express permission

from the State itself, so that these *quasi*-corporations, its agents, are not liable for such negligence, and no action for damages arising therefrom can be maintained against any of them, in the absence of an express statute imposing the liability and permitting the action."

The supreme court of Missouri in *Cassidy* v. *City of St. Joseph*, 247 Mo. 197 (152 S. W. 306), thus states the rule:

"Neither the State nor those *quasi*-corporations consisting of political subdivisions which, like counties and townships, are formed for the sole purpose of exercising purely governmental powers, are, in the absence of some express statute to that effect, liable in an action for damages either for the non-exercise of such powers, or for their improper exercise, by those charged with their execution. This applies alike to the acts of all persons exercising these governmental functions, whether they be public officers whose duties are directly imposed by statute, or employees whose duties are imposed by officers and agents having general authority to do so."

To the same effect is the speaking of the supreme court of Iowa in the recent case of *Snethen* v. *Harrison County*, 172 Iowa, 81 (152 N. W. 12), where it was said:

"The demurrer challenges the liability of the county under this state of facts and it is frankly conceded that, unless our new road law imposed liability upon the county either expressly or by fair implication, there can be no recovery. Counties, unlike cities and incorporated towns are not, as a rule, held liable for torts committed by them, so long as they are acting within the scope of their governmental powers. They are *quasi*-municipal corporations engaged in the performance of governmental functions, and are not responsible for the neglect of duties enjoined upon them, in the absence of statute giving a right of action."

Likewise it was held in *Silver* v. *Clay County*, 76 Kan. 228 (91 Pac. 55), we quote the syllabus:

"Counties are involuntary *quasi*-corporations and are mere auxiliaries to the State government and partake of the State's immunities from liability. They are in no sense business corporations.

"A county is not liable in damages for the negligent or wrongful acts of its board of county commissioners, unless such liability is expressly imposed by statute or necessarily implied therefrom."

This court from the beginning has, we think, clearly kept the proper distinction in mind. From the early case of *Commissioners of Highways* v. *Martin*, 4 Mich. 557 (69 Am. Dec. 333), this court has recognized the maintenance of highways by townships as the performance of a public rather than a proprietary duty and has consistently denied liability for its breach except as such liability may be created by statute; and in *City of Detroit* v. *Blackeby*, 21 Mich. 84 (4 Am. Rep. 450), it was said:

"The streets of Detroit are public highways, designed like all other roads, for the benefit of all people desiring to travel upon them. The duty or power of keeping them in proper condition is a public and not a private duty, and it is an office for the performance of which there is no compensation given to the city."

But in *City of Detroit* v. *Corey*, 9 Mich. 165 (80 Am. Dec. 78), it was pointed out that the sewers of a city were held by the city as proprietor and not in its sovereign capacity, and it was said:

"The sewers of the city, like its works for supplying the city with water, are the private property of the city—they belong to the city. The corporation and its corporators, the citizens, are alone interested in them—the outside public or people of the State at large have no interest in them, as they have in the streets of the city, which are public highways."

In *Rowland* v. *Kalamazoo Sup'ts of Poor*, 49 Mich. 553, liability of defendants for negligently operating

the poor farm so that a fire spread to adjoining premises was sustained. But defendants were operating the farm as proprietors for pecuniary profit and benefit to the county. This was pointed out in *Webster* v. *County of Hillsdale*, 99 Mich. 259, and in *Kilts* v. *Board of Sup'rs of Kent Co.*, 162 Mich. 646, it was held that the county was not liable to a laborer engaged in constructing a water system on the poor farm and it was said:

"The board of supervisors represented the county of Kent, and in making required or necessary provision for the poor performed a governmental function. See 4 Current Law, p. 721. The provision of necessary water for drinking, culinary, and sewer purposes, and as a protection against fire, is well within their implied power, if, indeed, they rest only in implication."

Mr. Justice HOOKER then cites many Michigan cases dealing with the subject.

Cities and villages may own and operate electric light plants; they may in addition to. furnishing light for the streets supply their inhabitants with electric current for domestic and other uses. But they own such plants as proprietors and in numerous cases have been held liable for the negligence of their agents in their operation. Among them see *Hodgins* v. *Bay City*, 156 Mich. 687 (132 Am. St. Rep. 546); *Sykes* v. *Village of Portland*, 177 Mich. 290; but in *Nicholson* v. *City of Detroit*, 129 Mich. 246 (56 L. R. A. 601), where it was claimed that plaintiff's decedent contracted smallpox while at work as a carpenter in the erection of a new hospital in close proximity to the old and infected one, liability was denied and it was said by Chief Justice HOOKER, speaking for the court:

"The true theory is that the township or city represents the State in causing these things to be done, and, like the State, it enjoys immunity from responsibility in case of injury to individuals, leaving liability for such injuries to rest upon the persons whose mis-

conduct or negligence is the immediate cause of the damage. The township or city must always act through officers. If it builds or repairs a road, constructs a bridge, collects a State or county tax, erects a town house, provides for the poor or the infirm, preserves the public peace, or provides a smallpox hospital, it must do it through persons selected for the purpose; and whether the law broadly directs that it shall do these things, or shall select officers whose duties are prescribed by law, its obligation is the same. The State relieves itself from the burden of multitudinous detail by delegating to and imposing upon aliquot parts of the body politic the power, and perhaps the duty, of doing for the State what it would otherwise have to supervise for itself. These powers are frequently legislative as well as ministerial. In this sense the township or city is a political agency, and the persons selected to perform the details whereby the result is accomplished are no more agents of the city or township, and no less the agents of the State, than as though the legislature had been more definite in prescribing the duties of the officers, and merely left their selection to the municipality. In imparting a portion of its powers, the State also imparts its own immunity."

In the recent case of *Heino* v. *City of Grand Rapids,* 202 Mich. 363 (L. R. A. 1918F, 528), Mr. Justice STEERE quite fully considered the question of governmental functions. In view of the contention of plaintiff's counsel in the instant case that the defendant board was not required by the act to enter into the contract and its action in so doing was voluntary and the act a permissive one only, we quote from what was there said at page 369:

"No suggestion is contained in any of these provisions relative to parks authorizing a business enterprise or municipal activity maintained for pecuniary gain, or contemplating compensation to the city, but on the contrary it is only empowered to provide at public expense met by taxation and furnish to the public gratuitously for the common welfare the recognized sanitary and social benefits which public parks

afford.   So far as its liability as a governmental agency for negligence in the performance of such functions when assumed is concerned, it is immaterial whether the authorized public duty be permissive or mandatory."

We do not determine in this case and it is not necessary to determine whether the act of 1919 impressed a duty on the county board to enter into the contract or whether its provisions are permissive only, nor do we overlook the fact that in *Attorney General* v. *Bruce,* 213 Mich. 532, we said:

"The proposition here raised affects not only the general highway law itself and the duties of all highway officials thereunder, but also the trunk lines and Federal aided road acts.   Under the former statute (Act No. 19, Pub. Acts 1919), the final determination with respect to the improvement and maintenance of a trunk line road is vested in the State highway commissioner.   The duty of maintaining such roads is placed on him, and with it is conferred the right to determine when repairs shall be made and what repairs are necessary.   Townships and counties are required to raise their share of the cost of such work."

And we there by mandamus compelled the supervisor to spread a tax to reimburse the State for money expended by it in repairing a State rewarded highway in the township.

This opinion would be incomplete if we did not consider four recent cases from other jurisdictions. In *Douglass* v. *Roane County Court,* 90 W. Va. 47 (110 S. E. 439, 22 A. L. R. 585), recovery was sought for damages occasioned by the negligent operation of a motor truck owned by the county court and used by it in the construction and maintenance of the highways of the county.   It was there held (quoting from the syllabus):

"The construction, maintenance and repair of public roads of a county, by its county court, are governmental functions; wherefore, for an injury inflicted

upon a citizen, by the negligence of its agent, servant or employee, in the execution of such work, it is not liable, unless the act causing the injury was of such character as to impose liability under the terms and provisions of a statute."

In *Gates* v. *Town of Milan*, 76 N. H. 135 (80 Atl. 39, 35 L. R. A. [N. S.] 599), plaintiff's decedent met his death while in the employ of the town upon a highway being constructed with State aid under a statute permissive in its terms. As the case involved liability where the statute was not mandatory but permissive only, we quote quite fully from it:

"But the absence of a legislative mandate to a town to perform a public, governmental service may not be determinative of the character it assumes, when, under a permissive statute, it performs the service. If it voluntarily exercises authority with which the legislature has invested it, without requiring its exercise, it may still be performing a governmental function from which it derives no special advantage. If certain repairs are necessary to be made on a highway, the town, in doing the needed work, is rendering a public service, whether its authority to do it is mandatory or permissive.

"The authority, however expressed, is vested in it as a State agency, and not as a private corporation. * * * If a town is authorized to perform a public service, it does not become any the less a public service because the town has an option to perform it or not as it may choose. It may act with reference to the particular work which it is permitted to do as the authorized agent of the State, as well when its authority is permissive as when the duty is imposed upon it. * * * It is clear from even a cursory reading of the act, that the legislature was providing for a general highway improvement throughout the State. It believed that it would promote the public welfare; and there is little evidence that the legislature, by permitting towns to do the work, understood that it was dealing with towns in any different capacity than that which they possess with reference to ordinary highways. They are agencies of the State (*Wooster* v. *Plymouth*, 62 N. H. 193) ; and, as the State may

require of them in their public capacity the performance of public services, there is no sound reason why its permission to them to do the same service was intended to apply to them in their private capacity.    *    *    *

"In this case the character of the work of repairing the highway was clearly governmental; and the evidence does not show that the legislature permitted the defendant to do the work in any other capacity than that of a State agent.    As a State agent, it was bound to perform the legislative duty of deciding what general repairs should be made upon its roads, and the ministerial duty of making them.    It had the tools and machinery necessary for that purpose, and it was competent to do the special work of permanent repairs as the representative of the State, which the State, with the concurrence of the town, decided ought to be done for the public benefit.    It was not employed as a private contractor to perform a public work, but as an agency of the State already charged with the duty of doing almost identical public work."

*Fisher* v. *Delaware Township*, 87 Kan. 674 (125 Pac. 94, 41 L. R. A. [N. S.] 1074, Ann. Cas. 1914A, 554), was somewhat similar to the New Hampshire case in that the action was brought by an employee for injuries sustained while performing work on a highway.    It was there said:

"The broad reason upon which exemption from liability exists is that the township or county, as the case may be, in building roads, is acting in the capacity of an agent of the State,—the sovereignty,—and is no more liable than the State itself would be, should it employ some other agency in doing the work.    That building and improving highways is a general public or governmental duty has never been doubted."

Out of accord with these three cases is *Moss* v. *Aiken County*, 114 S. C. 147 (103 S. E. 520).    But the reasoning of this case is neither convincing nor satisfactory, as the liability was held to be imposed under a statute of the State making the county liable for defects in public roads.

The briefs in the instant case show unusual diligence on the part of counsel and many authorities have been called to our attention. All of them have been examined and we have devoted considerable time to independent research. Millions of dollars are annually being expended by the State and localities on our public highways. New conditions have been created in the last few years. These conditions, however, are met as is usual by the application of old and well established rules of law. Our former decisions as well as the great weight of authority sustain the contention of defendants' counsel and the holding of the trial judge that in this work the counties are discharging a governmental function and in the absence of statute are immune from liability for their negligence or that of their agent in carrying on this work.

The judgment must be affirmed.

WIEST, C. J., and MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.