PARKER v CITY OF HIGHLAND PARK

Docket No. 55330. Argued October 5, 1977 (Calendar No. 15).—Decided December 27, 1978.

Casey Parker, as next friend of Vincent O. Parker, a minor, and for himself, brought an action for medical malpractice and breach of contract against the City of Highland Park, which owns and operates Highland Park General Hospital, and against others. The Wayne Circuit Court, Joseph G. Rashid, J., granted summary judgment for the city on the ground of governmental immunity. The Court of Appeals, Bashara, P.J., and J. H. Gillis and O'Hara, JJ., denied leave to appeal (Docket No. 17693). Plaintiffs appeal. *Held:*

The operation of the general hospital in this case was not a governmental function, and thus the city did not have governmental immunity.

Justice Fitzgerald, with Chief Justice Kavanagh and Justice Levin concurring, wrote:

1. The question is whether the day-to-day operation of a hospital is a "governmental function" within the meaning of the governmental tort liability act. In the past the Court has held that the operation of a hospital was a governmental function. However, thinking on the nature of government has evolved since that time and to read the statute as preserving for all time the former case law would be to assume that the Legislature failed to recognize that the evolution of case-law precedent is exclusively committed to the judicial branch of

REFERENCES FOR POINTS IN HEADNOTES
[1, 5, 9, 11, 12] 40 Am Jur 2d, Hospitals and Asylums §§ 22, 24.
[2, 6] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 46, 66.
[3] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 46.
[4] 56 Am Jur 2d, Municipal Corporation, Counties, and Other Political Subdivisions § 199.
[7] 57 Am Jur 2d, Municipal Corporations, School, and State Tort Liability §§ 53-55.
[8-10] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 31, 32.
Municipal immunity from liability for torts. 60 ALR2d 1193.

government. The term "governmental function" is particularly subject to judicial interpretation because the phrase is of judicial origin.

2. The old judicial definition of governmental function was justified in its time, on its own facts. Today we have a new set of facts described by old nomenclature. Application of the old rule should not be by reference to language alone without regard to the facts.

3. The term "governmental function" should be limited to those activities *sui generis* governmental—of essence to governing. Even though an activity is not proprietary, it does not necessarily follow that the activity is governmental. Although it may be an appropriate goal or objective of government to establish a hospital, it does not follow that the daily operations of the hospital constitute a governmental function. The operation of a hospital is not an activity of a peculiar nature such that the activity can only be done by government. Rather, government participates alongside private enterprise and charitable and religious organizations in operating hospitals. The fact that the government-operated hospital contributes to the "common good" does not distinguish it from a non-government-operated hospital, because hospitals operated by non-government entities, who do not enjoy immunity from tort liability, also contribute to the "common good". The modern hospital, whether operated by a city, a church, or a group of private investors, is essentially a business. As such, there is no rational ground upon which immunity from tort liability for the government-operated hospital can rest.

Justice Moody agreed with the conclusion that the activities of a municipally owned general hospital do not constitute a governmental function. Rather than adopt the position that the Court is statutorily bound by its previous decisions that the operation of a general hospital is a governmental function, particularly in the face of *Pittman v City of Taylor,* 378 Mich 41; 247 NW2d 512 (1976), which erased all common-law immunity precedent, the Court should begin anew its analysis of what a governmental function means under the statute. It should not be assumed that the Legislature failed to recognize that the evolution of case-law precedent is exclusively committed to the judicial branch of government.

1. Participation of modern government in everyday existence is so pervasive that any presumption must rightly run to government responsibility and consequent liability rather than to immunity. Immunity should be viewed as a privilege, limited to those activities uniquely associated with governmental enter-

prise. The concepts of an activity which has no common analogy in the private sector or the distinction between decisional and planning aspects of governmental duties as opposed to the operational aspects may have some significance in given cases, but in other instances they could be misleading or inapplicable.

2. As a basic guideline, the "governmental essence" test should be founded upon the inquiry whether the purpose, planning, and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this guideline, although performed by a government agency, are not governmental functions and therefore not immune.

3. The question in this case is whether the municipal participation is uniquely associated with governmental enterprise. Although it is not necessarily decisive, the number of private general hospitals is far greater than the number of governmental hospitals in this state. This fact alone would indicate that the function performed by municipal general hospitals is not uniquely served by government, however much the need for public participation remains. Further, though the purpose of maintaining public general hospitals is to enhance the health of the citizens of Michigan, the purpose is not one which can only be effectively accomplished in society by the government. Moreover, a significant consideration is the fact that the government has little direct responsibility for placing patients in public general hospitals. Admitting and discharging patients there is usually a matter of private concern.

4. The day-to-day care afforded to the substantial majority of patients in general hospitals is not of a unique character nor is it the result of governmental mandate. Activities conducted by the staff of a general hospital are not such as can effectively be accomplished only through government participation. The medical practice performed in the emergency room of a municipal general hospital falls outside the scope of a governmental function contemplated by the statute. Further, holding negligent activities of hospital personnel in general hospitals subject to liability is not an unacceptable interference with government's ability to govern.

5. It also should be noted that a full trial is still forthcoming. At trial, plaintiffs will be required to prove their allegations of malpractice by a preponderance of the evidence. Defendant will have a full day in court. Therefore, though the defense of

governmental immunity for public general hospitals is removed, all the safeguards of a trial remain.

Reversed and remanded.

Justice Ryan, joined by Justices Williams and Coleman, dissenting, wrote that the operation of a public hospital is a governmental function for purposes of the governmental tort liability act. At common law the expression "governmental function" was the term of art which both described the nature and defined the limits of state and municipal immunity from tort liability. By employing the same term of art in creating statutory immunity, the Legislature appears to have directed the courts to look to the common law for guidance in determining whether, in a given case, a governmental agency is exercising or discharging a "governmental function" for purposes of the immunity statute. Case law before the immunity statute held that the operation of a public hospital to promote the public health is a governmental function. Moreover, the operation of a public hospital is within the "common good of all" definition of a governmental function. The examination, diagnosis, and treatment of patients at a public hospital are activities intended to promote the general public health and are exercised for "the common good of all". Consequently, the negligence of the defendant city alleged in the complaint is within the governmental function of operating its municipal hospital. The defendant city is immune, therefore, from liability for its negligence, if any, by reason of the provisions of the immunity statute.

### DECISION OF THE COURT

1. STATES — HOSPITALS — TORTS — GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION — WORDS AND PHRASES.

The operation of a general hospital by a city is not a governmental function; therefore the city does not have governmental immunity from liability for medical malpractice in treating a patient at its general hospital (MCL 691.1407; MSA 3.996[107]).

### OPINION BY FITZGERALD, J.

2. STATES — TORTS — GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION — WORDS AND PHRASES.

*The meaning of the term "governmental function" has varied as the judiciary's thinking on the nature of government has evolved; to read the governmental tort liability act as preserving for all time former case law recognizing governmental*

*immunity would be to assume that the Legislature failed to recognize that the evolution of case-law precedent is exclusively committed to the judicial branch of government (MCL 691.1407; MSA 3.996[107]).*

3. STATES — TORTS — GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION — STATUTES — COMMON LAW.

*Determining whether or not a certain activity is a "governmental function" within the meaning of the governmental tort liability act, in the absence of a legislative definition of the term, is a function committed to the judiciary, particularly because the phrase is of judicial origin (MCL 691.1407; MSA 3.996[107]).*

4. STATES — TORTS — GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION.

*The term "governmental function" under the governmental tort liability act should be limited to those activities sui generis governmental—of essence to governing; an activity is not necessarily governmental even though it is not proprietary (MCL 691.1407; MSA 3.996[107]).*

5. STATES — HOSPITALS — TORTS — GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION — WORDS AND PHRASES.

*The day-to-day operation of a hospital is not a "governmental function" within the meaning of the governmental tort liability act; the modern hospital is essentially a business and the operation of a hospital is not an activity of a peculiar nature such that it can only be done by government (MCL 691.1407; MSA 3.996[107]).*

OPINION BY BLAIR MOODY, JR., J.

6. STATES — TORTS — GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION — COMMON LAW.

*The Supreme Court should begin anew its analysis of what a governmental function means under governmental tort liability act, particularly in the face of its decision which erased all common-law immunity precedent; a construction of the statute as an "affirmation" preserving for all time previous case law would assume that the Legislature failed to recognize that the evolution of case-law precedent is exclusively committed to the judicial branch of government (MCL 691.1407; MSA 3.996[107]).*

7. STATES — TORTS — GOVERNMENTAL IMMUNITY.

*Participation of modern government in everyday existence is so pervasive that any presumption must rightly run to govern-*

ment responsibility and consequent liability rather than to immunity.

8. States — Torts — Governmental Immunity — Governmental Function.

The crux of the governmental essence test for deciding whether a government agency is immune by statute from liability for a tort should be an inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government; unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this guideline, although performed by a government agency, are not governmental functions and therefore the agency is not immune.

9. States — Hospitals — Torts — Governmental Immunity — Governmental Function.

Medical practice in the emergency room of a municipal general hospital falls outside the scope of a governmental function contemplated by the governmental tort liability statute because the day-to-day care afforded to the substantial majority of patients in general hospitals is not of a unique character or precipitated by governmental mandate, activities conducted by the staff of a general hospital are not such as can effectively be accomplished only through government participation, and holding negligent activities of hospital personnel in general hospitals subject to liability is not an unacceptable interference with government's ability to govern (MCL 691.1407; MSA 3.996[107]).

Dissenting Opinion by Ryan, J.

10. States — Torts — Governmental Immunity — Governmental Function — Statutes — Common Law.

The Legislature, by employing a common-law term of art, "governmental function", in creating statutory immunity from tort liability, appears to have directed the courts to look to the common law for guidance in determining whether, in a given case, a governmental agency is exercising or discharging a "governmental function" for purposes of the governmental tort liability statute (MCL 691.1407; MSA 3.996[107]).

11. States — Hospitals — Torts — Governmental Immunity — Governmental Function — Words and Phrases.

Case law before the governmental tort liability act held that the operation of a public hospital to promote the public health is a

*"governmental function" and the operation of a public hospital is within the "common good of all" definition of a "governmental function"; therefore the operation of a public hospital is a "governmental function" for purposes of the governmental tort liability act (MCL 691.1407; MSA 3.996[107]).*

12. STATES — HOSPITALS — TORTS — GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION — WORDS AND PHRASES.

*Examination, diagnosis, and treatment of patients at a public hospital are activities intended to promote the general public health and are exercised for the common good of all; consequently alleged negligence of a municipal hospital in failing to discover and remove a piece of glass which was lodged beneath a patient's skin and which remained there after he was treated at the hospital is within the city's governmental function of operating the hospital and the city is immune from liability for its negligence, if any, by reason of the provisions of the governmental tort liability act (MCL 691.1407; MSA 3.996[107]).*

*Lopatin, Miller, Bindes, Freedman & Bluestone* (by *Michael A. Gantz* and *Michael A. Gagleard)* for plaintiffs.

*Garan, Lucow, Miller, Lehman, Seward & Cooper* (by *Albert A. Miller)* and *David J. Curran,* and *Cozadd, Shangle & Smith* (by *B. Ward Smith* and *Daniel J. Andrews),* of counsel, for defendants.

Amicus Curiae:

*Roger E. Craig,* Corporation Counsel, *George G. Matish,* Deputy Corporation Counsel, and *Thomas G. Gallagher,* Assistant Corporation Counsel, for the City of Detroit.

FITZGERALD, J. Plaintiff Vincent Parker fell through a glass storm door on September 12, 1970. He was treated for serious lacerations on the back and neck at the emergency room of Highland Park General Hospital, a municipal hospital operated by the City of Highland Park. In 1972, Vincent Parker and his father, Casey Parker, filed a malprac-

tice suit against the hospital; Physicians Emergency Service, the corporation which operated the emergency room; and the doctor who had treated Vincent Parker.

In their complaint plaintiffs alleged that the treating physician had failed to take X-rays, that Vincent Parker had continued to feel pain in his back after treatment at Highland Park General Hospital, and that in 1972 treatment at another hospital revealed that a large piece of glass had remained lodged underneath the skin of Vincent Parker's back since his accident.

The city moved for summary judgment, contending that plaintiffs had failed to state a claim upon which relief could be granted, because the city, as a governmental agency engaged in the exercise or discharge of a governmental function, was immune from tort liability under MCL 691.1407; MSA 3.996(107).[1] The Court of Appeals denied leave to appeal. We granted leave to consider whether the day-to-day operation of a hospital[2] is a "governmental function" as that phrase is used in the statute.

In the past this Court did hold that the operation of a hospital was a governmental function. *Nicholson v Detroit,* 129 Mich 246; 88 NW 695

[1] "Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

[2] Because the case was disposed of below on the governmental immunity issue, the facts on the relationship among the defendants in this case have not been developed. Therefore, we offer no opinion on whether or not the hospital may escape liability because the emergency room was operated by a corporation of which the treating physician was a member, as Highland Park Hospital suggests. Nor do we decide the effect of Dr. Sokolowski's alleged settlement with plaintiffs.

(1902), *Martinson v Alpena,* 328 Mich 595; 44 NW2d 148 (1950).[3]

We do not believe that because we once held the operation of a hospital to be a governmental function we must do so today.[4] A comparison of the reasoning employed by this Court in *Nicholson* with that of *Martinson* shows that the meaning of the term "governmental function" has varied as the judiciary's thinking on the nature of government has evolved.[5]

---

[3] *Nicholson* involved a hospital for contagious disease. Plaintiff's decedent was a carpenter who contracted smallpox when employed by the City of Detroit in the construction of a new hospital on the site of an existing hospital. Plaintiff alleged that the old building and the grounds were infected with smallpox germs and the city was negligent in exposing the carpenter to the germs. Nonliability was based on the city's performing a "governmental function". To the *Nicholson* Court, performing a governmental function meant that the city was acting as an agent of the state rather than for its own private purposes. See Cooperrider, *The Court, the Legislature, and Governmental Tort Liability in Michigan,* 72 Mich L Rev 187, 222-224 (1973).

*Martinson* involved a general hospital operated by the City of Alpena. Nurse Madeleine Martinson fell into the elevator shaft. She sued the city, alleging negligence because of a faulty safety catch which allowed the guard door to open when the elevator was at another floor. The Court relied on *Nicholson*, finding a general hospital "within the same category" as a contagious hospital. The Court also applied the "common good of all" test for distinguishing between a governmental and a proprietary function.

" 'The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be liability. That it may be undertaken voluntarily and not under compulsion of statute is not of consequence.' *Gunther v Cheboygan County Road Commissioners,* 225 Mich 619 [196 NW 386 (1923)]; *Johnson v Ontonagon County Road Commissioners,* 253 Mich 465 [235 NW 221 (1931)]; *Daszkiewicz v Detroit Board of Education,* 301 Mich 212 [3 NW2d 71 (1942)]." *Martinson v Alpena,* 328 Mich 595, 598; 44 NW2d 148 (1950).

[4] "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Oliver Wendell Holmes, Jr., Collected Legal Papers (New York: Harcourt, Brace & Howe, 1920), p 187.

[5] For a complete exposition on the evolution of the governmental/proprietary distinction, see Cooperrider, *The Court, the Legislature, and Governmental Tort Liability in Michigan,* 72 Mich L Rev 187, 219-237 (1973).

Nor do we believe that the Legislature intended that we must today hold the operation of a hospital to be a governmental function because we did so in 1902 and 1950. As was stated in the Kavanagh-Fitzgerald dissenting opinion in *Thomas v Dep't of State Highways,* 398 Mich 1, 17, fn 4; 247 NW2d 530 (1976), to read the second sentence of MCL 691.1407; MSA 3.996(107)[6] as "preserving for all time state governmental immunity heretofore recognized by case law" would be to "assume that the Legislature failed to recognize that the evolution of case-law precedent is exclusively committed to the judicial branch of government".[7]

Determining whether or not a certain activity is or is not a "governmental function" is a matter of statutory interpretation. In the absence of a legislative definition of the term, statutory interpretation is a function committed to the judiciary. The term "governmental function" is particularly subject to judicial interpretation because the phrase is of judicial origin.

It is time we recognize that our case-law precedent, as it attempts to distinguish between a governmental and a proprietary function, is "inher-

---

[6] "Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

[7] Compare the interesting California case *Li v Yellow Cab Co of California,* 13 Cal 3d 804; 532 P2d 1226; 119 Cal Rptr 858 (1975). The California Court adopted a comparative negligence rule in the face of a contributory negligence statute. The Court believed the Legislature's intent in enacting the 1872 statute was to "state the basic rule of negligence together with the defense of contributory negligence modified by the emerging doctrine of last clear chance". Even so, the Court believed the Legislature did not intend to "restrict the courts from further development of these concepts according to evolving standards of duty, causation, and liability".

The effect of the California Court's decision, of course, was to totally nullify the statute. We do not go so far. In defining "governmental function" more narrowly than in the past, we do limit the operation of the statute, yet preserve the doctrine of governmental immunity.

ently unsound".[8] In abrogating common-law judge-made immunity *(Pittman v Taylor,* 398 Mich 41, 49; 247 NW2d 512 [1976]), we recognized the appropriateness of the analysis used to overrule a hospital's charitable immunity to the governmental immunity area of the law. By substituting "definition of governmental function" and "governmental function" for "charitable" and "charities" in *Parker v Port Huron Hospital,* 361 Mich 1, 25; 105 NW2d 1 (1960), we said about charitable immunity then what we wish to say about governmental immunity today:

> "The old rule of charitable immunity [definition of governmental function] was justified in its time, on its own facts. Today we have a new set of facts. It is true that the new facts are still described by the same word in our English language—"charities" [governmental function]—but that is because our language has not changed as the facts of our life have changed. *We have new facts described by old nomenclature.* To say that the old rule of law still applies is to reach a result on the basis of nomenclature, not of facts; it is to apply a rule, proper in its time, to completely new facts, and to justify doing so by reference to language merely without regard to the facts." (Emphasis supplied.)

Again, we reject the rigid dichotomy of the past. Because an activity is not proprietary, it does not necessarily follow that the activity is governmental. We would limit the term "governmental function" to those activities *sui generis* governmental —of essence to governing. This principle was rec-

---

[8] The United States Supreme Court has noted that in the governmental/proprietary "quagmire" "the decisions in each of the states are disharmonious and disclose the inevitable chaos when courts try to apply a rule of law that is inherently unsound". *Indian Towing Co v United States,* 350 US 61, 65; 76 S Ct 122; 100 L Ed 48 (1955).

Professor Davis has criticized the distinction as "probably one of the most unsatisfactory known to the law". 3 Davis, Administrative Law Treatise, § 25.07, p 460.

ognized in *Lykins v Peoples Community Hospital,*
355 F Supp 52, 53 (ED Mich, 1973):

"This court does not believe the statutory scheme
contemplates immunity for the day-to-day operations of
a hospital. The statute speaks of immunity for 'govern-
mental functions,' and this court is of the opinion that
while it may be an appropriate goal or objective of
government to establish a hospital authority, it does not
follow that the daily operations of such a hospital
authority constitute a governmental function. Govern-
mental functions more properly refer to the tasks of
governing. There is, for example, a governmental char-
acter to activities such as the collection of taxes or the
operation of a court system. But the services of healing
offered by a public hospital are not governmental func-
tions."

The operation of a hospital is not an activity of
a peculiar nature such that the activity can only
be done by government. Rather, government par-
ticipates alongside private enterprise, charitable
and religious organizations in operating hospitals.[9]

In adopting the "of essence to government" test
for defining the term "governmental function", we
reject the "common good of all" test applied in
*Martinson v Alpena, supra.* The operation of a
hospital is a noble undertaking on the part of a
unit of government. But, the fact that the govern-
ment-operated hospital contributes to the "com-
mon good" does not distinguish the government-
operated hospital from the non-government-oper-

---

[9] The analysis of ownership of hospitals located in Michigan which
have registered with the American Hospital Association is as follows:

| | |
|---|---|
| State and local government | 70 |
| Federal government | 9 |
| Non-government, not for profit | 167 |
| Investor owned, for profit | 6 |
| Osteopathic (non-government, not for profit) | 2 |

American Hospital Association, *Guide to the Health Care Field, 1977
Edition,* pp 108-116.

ated hospital.[10] We feel safe in assuming that hospitals operated by non-government entities, who do not enjoy immunity from tort liability, also contribute to the "common good".

The modern hospital, whether operated by a city, a church, or a group of private investors, is essentially a business.[11] As such, there is no rational ground upon which immunity for the government-operated hospital can rest.[12]

Reversed and remanded. No costs, a public question.

KAVANAGH, C.J., and LEVIN, J., concurred with FITZGERALD, J.

---

[10] Nor do we accept the contention that what distinguishes the government-operated hospital from others, hence entitling it to immunity, is that the government-operated hospital must accept all comers, regardless of ability to pay. In the usual case, it is not the hospital itself that extends "charity", but another arm of government, often a county welfare agency or the Medicare system. In *Martinson, supra,* p 597, although the city hospital apparently accepted indigent patients, the county welfare board paid the bill of those patients. Although government often pays for the health care services extended to indigents, many times the care is provided in non-government operated hospitals.

[11] "Hospitals today are growing into mighty edifices in brick, stone, glass and marble. Many of them maintain large staffs, they use the best equipment that science can devise, they utilize the most modern methods in devoting themselves to the noblest purpose of man, that of helping one's stricken brother. But they do all this on a business basis, submitting invoices for services rendered—and properly so.

"And if a hospital functions as a business institution, by charging and receiving money for what it offers, it must be a business establishment also in meeting obligations it incurs in running that establishment. One of those inescapable obligations is that it must exercise a proper degree of care for its patients, and, to the extent that it fails in that care, it should be liable in damages as any other commercial firm would be liable."

*Flagiello v Pennsylvania Hospital,* 417 Pa 486, 493-494; 208 A2d 193, 196-197 (1965) (overruling charitable immunity).

[12] As noted in *Thomas, supra,* to recognize governmental immunity for the day-to-day operation of a hospital would equate "governmental function" with "governmental participation". If the Legislature had intended that result, surely the first sentence of MCL 691.1407; MSA 3.996(107) would read, "Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability." We do not today decide whether or not such a statute would pass constitutional muster.

Blair Moody, Jr., J. *(concurring).* The question of law on this appeal is whether the activities conducted by a municipally owned general hospital providing the public medical service for a fee constitute a governmental function within the meaning of MCL 691.1407; MSA 3.996(107).

It is determined that the activities of such a municipally owned general hospital do not constitute a governmental function. Therefore, this opinion concurs with the result reached by Justice Fitzgerald. However, the reasons for reaching this conclusion differ to some extent from the analysis of my colleagues.

I

Governmental tort immunity in Michigan was originally created by court decision. Early in the state's history, this Court began a slow process of extending protection from tort liability to municipal and state governing units. Often, contrary to strong indications from the Legislature to allow governmental liability, this Court enlarged the scope of governmental immunity. It fashioned the present theory of protection embodied in the "governmental function" concept.[1]

The momentum of these protective decisions continued unabated until the relatively recent case of *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961). The Court in *Williams* held that "the judicial doctrine of governmental immunity" was henceforth abolished in Michigan. However, this Court later restricted the broad sweep of *Williams*

---

[1] See, generally, Cooperrider, *The Court, the Legislature, and Governmental Tort Liability in Michigan,* 72 Mich L Rev 187 (1973).

to apply only to municipal corporations. *McDowell v State Highway Commissioner,* 365 Mich 268; 112 NW2d 491 (1961).

In response to the *Williams* initiative, the Legislature passed 1964 PA 170. That statute, as amended by 1970 PA 155, included a general provision for immunity:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise and discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed." MCL 691.1407; MSA 3.996(107).

Although not defining the term "governmental function", the Legislature did define the concept of "proprietary function":

"The immunity of the state shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as herein defined. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the state, excluding, however, any activity normally supported by taxes or fees." MCL 691.1413; MSA 3.996(113).

The evolution of common-law precedent is committed to the judicial branch of the government. No more striking example of judicial alteration in order to accommodate the needs and responsibilities of the times exists than the ringing pronouncement by this Court in *Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976). In *Pittman,* this Court expressly abrogated the an-

cient and maligned common-law doctrine of state governmental immunity.

Likewise, the concepts of governmental and proprietary functions have evolved different meanings over the years.[2] These terms have been judicially manipulated to fit contemporary requirements. In *Thomas v Dep't of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), this Court interpreted the present governmental immunity statute. It was fully recognized that the concept of governmental function was dependent for its meaning upon judicial interpretation.

Several of my colleagues hold the position that the second sentence of the immunity provision requires past precedent to bind our present response to the statute:

"Obviously this language must be construed as an 'affirmation' of case-law precedent on the subject of the state's immunity." *Thomas, supra,* 11.

Thus, since this Court previously held the operation of a general hospital to be a governmental function, the Court would be statutorily bound by the old law. See *Martinson v Alpena,* 328 Mich 595; 44 NW2d 148 (1950).

Rather than adopt this position, particularly in the face of *Pittman, supra,* which erased all common-law immunity precedent, this Court should begin anew its analysis of what a governmental function means under this statute.

Although the Legislature saw fit to statutorily define the term "proprietary", significantly it did not define "governmental" function. Further, it may be discerned that there are actually three

---

[2] See, generally, Anno: *Immunity from liability for damages in tort of state or governmental unit or agency in operating hospital,* 25 ALR2d 203, §§ 12-14. See, also, Cooperrider, *supra,* 219-237.

categories of activities: proprietary, governmental and an area wherein activities are neither clearly governmental nor proprietary.[3] It is within this presently undifferentiated area that this Court must chart a modern course.

This conclusion was aptly stated by the minority in *Thomas:*

"We do not, however, construe this sentence [the second sentence of the statutory immunity provision] to be an 'affirmation' of case-law precedent preserving for all time state governmental immunity heretofore recognized by case law. To read it in such a manner would be to assume that the Legislature failed to recognize that the evolution of case-law precedent is exclusively committed to the judicial branch of government." 398 Mich 17, fn 4.

## II

Participation of modern government in our everyday existence is so pervasive that any presumption must rightly run to government responsibility and consequent liability rather than to immunity. Present realities dictate viewing immunity as a privilege, limited to those activities uniquely associated with governmental enterprise.

It is held today that activity conducted in a general hospital operated by a municipality is not a governmental function for immunity purposes. This conclusion is predicated on the basis that the term "governmental function" is limited to those activities *sui generis* governmental—of essence to governing.

In *Thomas,* it was suggested that this test meant that a function is not governmental unless the

---

[3] See *Thomas, supra,* 18-19, fn 7.

particular activity involved has "no common anal-
ogy in the private sector". Furthermore, it was
observed that the perimeter of governmental func-
tion will most often "run along the line of distinc-
tion between decisional and planning aspects of
governmental duties on the one hand, and opera-
tional aspects on the other". 398 Mich 21, 22.

Although these concepts may have some signifi-
cance in given cases when applying the "govern-
mental essence" test, in other instances they could
be misleading or inapplicable. For instance, it
would be incongruous to find that the operational
activities of some public agencies are other than
governmental. Likewise, conceivably there could
be essential governmental activity which would
have some common analogy in the private sector.

To delineate a complete and balanced definition
of governmental function within a simplistic for-
mat would be presumptuous. However, as a basic
guideline, the crux of the governmental essence
test should be founded upon the inquiry whether
the purpose, planning and carrying out of the
activity, due to its unique character or governmen-
tal mandate, can be effectively accomplished only
by the government. Unless liability would be an
unacceptable interference with government's abil-
ity to govern, activities that fall outside this per-
imeter, although performed by a government
agency, are not governmental functions and there-
fore not immune.

## III

The municipal ownership and operation of a
general hospital clearly indicates government par-
ticipation. The question is whether this participa-
tion is uniquely associated with governmental en-
terprise.

Although not necessarily decisive, the number of private general hospitals is far greater than the number of governmental hospitals in this state.[4] This statistic alone would indicate that the function performed by municipal general hospitals is not uniquely served by government, however much the need for public participation remains.

Further, though the purpose of maintaining public general hospitals is to enhance the health of the citizens of Michigan, the purpose is not one which can only be effectively accomplished in society by the government. It is recognized that public general hospitals in most instances are maintained substantially by patient user charges. The fiscal involvement of government is significantly displaced by private payment.

Moreover, a significant consideration is the fact that government has little direct responsibility for placing patients in public general hospitals. Admitting and discharging patients there is usually a matter of private concern. This situation may be contrasted with public mental hospitals where patients are committed into an institution, often by court order, to fulfill the clear governmental responsibility of caring for those who cannot care for themselves or who present a danger to society. See the Mental Health Code, MCL 330.1001 *et seq.;* MSA 14.800(1) *et seq.*

The day-to-day care afforded to the substantial

---

[4] As Justice FITZGERALD noted in his opinion, the ownership of hospitals in Michigan registered with the American Hospital Association is heavily weighted toward private ownership:

| | |
|---|---|
| State and local government | 70 |
| Federal government | 9 |
| Non-government, not for profit | 167 |
| Investor owned, for profit | 6 |
| Osteopathic (non-government, not for profit) | 2 |

American Hospital Association, *Guide to the Health Care Field, 1977 Edition,* pp 108-116.

majority of patients in general hospitals is not of a unique character or precipitated by governmental mandate. Activities conducted by the staff of general hospitals are not such as can effectively be accomplished only through government participation. The medical practice performed in the emergency room of a municipal general hospital falls outside the scope of a governmental function contemplated by the statute. See *Lykins v Peoples Community Hospital,* 355 F Supp 52 (ED Mich, 1973).

Further, holding negligent activities of hospital personnel in general hospitals subject to liability is not an unacceptable interference with government's ability to govern.

It also should be noted that a full trial is still forthcoming. At trial, plaintiffs will be required to prove their allegations of malpractice by a preponderance of the evidence. Defendant will have a full day in court. Therefore, though the defense of governmental immunity for public general hospitals is removed, all the safeguards of a trial remain.

Since defendant Highland Park General Hospital was improperly granted summary judgment in this case, I concur in reversing the trial court and remanding the matter for trial.


Ryan, J. *(dissenting).* The question for our consideration in this case is whether the operation of a hospital by a municipality constitutes the exercise or discharge of a governmental function thus immunizing the city from tort liability under MCL 691.1407; MSA 3.996(107). In my view it does, and I would affirm the trial court's grant of defendant city's motion for summary judgment.

MCL 691.1407; MSA 3.996(107) states:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

In *Thomas v Dep't of State Highways,* 398 Mich 1, 10; 247 NW2d 530 (1976), the majority noted that the historical context in which the foregoing statute was enacted suggests that the Legislature intended to codify the state's existing common-law or judge-made immunity and to restore the immunity of municipalities as it existed prior to the 1961 decision of *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961).

At common law, the expression "governmental function" was the term of art which both described the nature and defined the limits of state and municipal immunity from tort liability. By employing that same term of art in creating statutory immunity, the Legislature appears to have directed the courts to look to the common law for guidance in determining whether, in a given case, a governmental agency is exercising or discharging a "governmental function" for purposes of the immunity statute.

Reference to the pre-statutory immunity cases discloses that in *Martinson v Alpena,* 328 Mich 595; 44 NW2d 148 (1950), this Court held that the operation of a public hospital to promote the general public health is indeed a governmental function. Moreover, it seems evident that the operation of a public hospital is within the frequently cited "common good of all" definition of a "governmental function". See *Martinson,* and *Gunther v Che-*

*boygan County Road Commissioners,* 225 Mich
619, 621; 196 NW 386 (1923), citing *Bolster v City
of Lawrence,* 225 Mass 387; 114 NE 722 (1917).

I conclude, therefore, that the operation of a
public hospital is a governmental function at com-
mon law in Michigan and is a governmental func-
tion for purposes of the statute in question.

It remains to be determined whether the plain-
tiffs in this case have alleged in their complaint
such specific tortious activity against the City of
Highland Park as is within the scope of the immu-
nity the city enjoys.

The complaint alleges that the defendant city,
through its agents, servants and employees at the
Highland Park General Hospital, was negligent in
the examination, diagnosis and treatment of the
plaintiff, Vincent Oshee Parker, in failing to dis-
cover and remove a piece of glass which was
lodged beneath the skin of his back and which
remained there for several months after he was
treated at the hospital.

Manifestly, the examination, diagnosis and
treatment of patients at a public hospital are
activities intended to promote the general public
health and are exercised for "the common good of
all". Consequently, the alleged tortious activity of
the defendant city is within the governmental
function of operating its municipal hospital. The
defendant is immune, therefore, from liability for
its negligence, if any, in performing that function
in this case by reason of the provisions of MCL
691.1407; MSA 3.996(107).

The trial court was correct in granting the
defendant city's motion for summary judgment on
the basis of governmental immunity.

I vote to affirm.

Williams and Coleman, JJ., concurred with
Ryan, J.