## KEENAN v SECRETARY OF STATE

Docket No. 49548. Submitted October 16, 1980, at Lansing.—Decided
January 22, 1981. Leave to appeal applied for.

Courtney M. Schusterbauer, a minor, was killed when struck by
an automobile driven by a driver's license examinee who was
taking a road test being administered by an employee of the
Secretary of State. Patrick A. Keenan, administrator of the
estate of the deceased, brought an action in the Court of Claims
against the Secretary of State, alleging negligence on the part
of the employee administering the test. The court, Jack W.
Warren, J., granted summary judgment in favor of the defen-
dant on the basis of governmental immunity. Plaintiff appeals.
*Held:*

Administration of a driver's license examination does not fall
within the purview of the governmental immunity statute. It is
not of such a peculiar nature that it can only be done by
government nor is it necessary to the policies and continued
operation of the functions of the state. Summary judgment was
improperly granted.

Reversed and remanded.

1. PLEADING — GOVERNMENTAL IMMUNITY — AVOIDANCE OF IMMU-
NITY.

A plaintiff's complaint must plead facts in avoidance of govern-
mental immunity from tort liability in order to state an action-
able claim against the government.

2. LICENSES — AUTOMOBILES — DRIVER'S LICENSE EXAMINATIONS —
TORTS — GOVERNMENTAL IMMUNITY — STATUTES.

The administering of a driver's licensing examination is not of
such a peculiar nature that it can only be done by government
nor is it necessary to the policies and continued operation of

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 310-
312.

61 Am Jur 2d, Pleading § 4 *et seq.*

[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 89,
99.

the functions of the state; therefore, administration of the examination does not fall within the purview of the statute providing governmental immunity from tort liability (MCL 691.1407; MSA 3.996[107]).

*Schuur, Keating & Wells, P.C.,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Frederick H. Hoffecker,* Assistant Attorney General, for defendant.

Before: M. F. CAVANAGH, P.J., and T. M. BURNS and R. H. CAMPBELL,* JJ.

M. F. CAVANAGH, P.J. Plaintiff Administrator filed a complaint in the Court of Claims, alleging that an employee of the Secretary of State negligently supervised and administered a driver's license road test to an examinee whose vehicle struck and killed nine-year-old Courtney M. Schusterbauer.

The complaint specifically alleged that the examinee, after attempting a right turn at an intersection, failed to straighten the vehicle's wheels. The vehicle continued over the curb and onto the sidewalk where it struck the child. It then continued across the sidewalk pinning the child between the car and a curb located between the sidewalk and an adjacent parking lot. The Secretary of State examiner, who was in the vehicle, allegedly took no steps to sound a warning, take control of the steering wheel, turn off the ignition or do any other act which may have prevented the tragedy.

The defendant, Secretary of State, moved for summary judgment, GCR 1963, 117.2(1), based on Michigan's governmental immunity statute, MCL

* Circuit judge, sitting on the Court of Appeals by assignment.

691.1407; MSA 3.996(107). This motion was granted. Plaintiff appeals.

We are called upon to decide whether the Secretary of State may be held liable for damages resulting from the alleged negligent administration of a driver's license road test.

The statute establishing governmental immunity in Michigan, MCL 691.1407; MSA 3.996(107), states:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

To state an actionable claim against the government, a plaintiff's complaint must plead facts in avoidance of governmental immunity from tort liability. *McCann v Michigan,* 398 Mich 65, 77; 247 NW2d 521 (1976), *Bush v Oscoda Area Schools,* 72 Mich App 670; 250 NW2d 759 (1976).

Specific exceptions from the general grant of governmental immunity have been enacted but they are not applicable in the instant case. Therefore, to avoid the application of the governmental immunity statute, in the present case, the administration of the driver's license road test by the Secretary of State's employee must be shown by the plaintiff not to have been "in the exercise or discharge of a governmental function".

The determination of whether an activity is a "governmental function" is a task left to the courts by the Legislature. The term is nowhere defined in the statute.

The Supreme Court has progressed through a series of decisions, deciding whether particular activities are governmental functions on a case-by-case basis. Justices WILLIAMS, RYAN, COLEMAN and LINDEMER indicated in *Thomas v State Highway Dep't,* 398 Mich 1; 247 NW2d 530 (1976), that the legislative enactment of governmental immunity without statutory definition meant that the Legislature intended to continue the governmental immunity which existed at common law. Justices FITZGERALD, KAVANAGH and LEVIN, dissenting in *Thomas,* stated that a "governmental function" included only those activities unique to government without a counterpart in the private sector.

"Thus, a government is immune only when it is planning and carrying out duties which, due to their peculiar nature, can only be done by a government. The mere fact that a governmental agency is doing a certain act does not make such act a 'governmental function' if a private person or corporation may undertake the same act. Thus, 'governmental function' is not delineated by questions of the broad scope of an activity undertaken or by financial or insurance considerations which may be indicative of a governmental undertaking, but rather by viewing the precise action allegedly giving rise to liability, and determining whether such action is *sui generis* governmental—of essence to governing." *Thomas, supra,* 21, (dissent of KAVANAGH, C.J., and FITZGERALD, J.).

Next, the Supreme Court majority in *Parker v Highland Park,* 404 Mich 183, 193; 273 NW2d 413 (1978), adopted the analysis of the dissent in *Thomas, supra,* and indicated that they "would limit the term 'governmental function' to those activities *sui generis* governmental—of essence to governing". Justice MOODY, casting the deciding vote in *Parker,* agreed with Justices KAVANAGH,

FITZGERALD and LEVIN that a particular activity is a "governmental function" and thus immune when the activity has "no common analogy in the private sector", but Justice MOODY said that was only one factor in the determination. He stated in his *Parker* concurrence:

"To delineate a complete and balanced definition of governmental function within a simplistic format would be presumptuous. However, as a basic guideline, the crux of the governmental essence test should be founded upon the inquiry whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be efffectively accomplished only by the government. Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune." *Parker, supra,* 200.

The *Parker* majority (Justice MOODY concurring) held that the day-to-day operation of a municipal general hospital is not immune from tort liability pursuant to the governmental immunity statute. However, Justice MOODY in *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978), concurred with Justices COLEMAN, RYAN and WILLIAMS in finding that a state mental hospital is clothed in governmental immunity. Justice MOODY stated:

"Accordingly, as public mental hospitals perform an essentially unique activity mandated by legislative action, immunity must be extended as a governmental function under the statute. The proper planning and carrying out of this function can effectively be accomplished only by the government. The function is essentially governmental.

\*   \*   \*

"The Legislature has left the interpretation of governmental function to the courts. Of necessity, until this term is definitively refined, it is our responsibility to come to grips with the issue on a case-by-case basis." *Perry, supra,* 214-215.

This Court, in discussing the propriety of summary judgment in favor of a county drainage district pursuant to the Michigan governmental immunity statute, stated:

"Those cases that have not found a governmental function stress that the activities in question are often carried out by private enterprise as well as government and that the activities are not of such a unique character or governmental mandate that they may be effectively accomplished only by government. *Those cases that have found a governmental function involve an activity that can indeed only be carried on by government (e.g.,* operation of a jail) *or that is necessary to the policies and continued operation of the functions of the state, because of the lack of sufficient similar activity in the private sector (e.g.,* public mental hospitals)." *Ross v Consumers Power Co,* 93 Mich App 687, 696-697; 287 NW2d 319 (1979). (Emphasis supplied.)

Michigan law requires that a motor vehicle operator have a valid driver's license. MCL 257.301(1); MSA 9.2001(1). Persons who may administer the driver's examination are designated in the Michigan Vehicle Code:

"Sheriffs and their deputies and the chiefs of police of cities and villages having organized police departments within this state and their duly authorized representatives, and employees of the secretary of state may be appointed examining officers for the purpose of examining applicants for operator's and chauffeur's licenses by the secretary of state. An examining officer shall conduct examinations of applicants for operator's and chauffeur's licenses, under this chapter, and in accor-

dance with the rules promulgated by the secretary of state under subsection (3). Upon conducting an examination, these persons shall make a written report of their findings and recommendations to the secretary of state." MCL 257.309(2); MSA 9.2009(2).

The Michigan Vehicle Code goes on to delineate the basic skills to be tested in the driver's examination.

"The secretary of state shall promulgate rules for the examination of the applicant's physical and mental qualifications to operate a motor vehicle in a manner as not to jeopardize the safety of persons or property, and shall ascertain whether facts exist which would bar the issuance of a license under section 303. * * * The examination shall not include investigation of facts other than those directly pertaining to the ability of the applicant to operate a motor vehicle with safety or those facts declared to be prerequisite to the issuance of a license under this act." MCL 257.309(3); MSA 9.2009(3).

Because the Secretary of State is examining prospective drivers to ascertain their fitness and ability to drive in a manner which would not endanger the public, it is logical for the Secretary of State to be prohibited from administering the test in a way which would subject the public to the very danger the examination is intended to guard against. The driver's license examination is not "*sui generis*—of the essence of governing". This activity is not of such a peculiar nature that it can only be done by government. Other states statutorily allow private individuals to administer driving tests. Fla Stat Anno, 322.13; Idaho Code, 49-317. Neither is the administering of the driver's test "necessary to the policies and continued operation of the functions of the state", regardless of the fact

that there is no similar activity in the private sector in Michigan. *Ross v Consumers Power, supra.* We find the Secretary of State's administration of driver's license examinations does not fall under the purview of the governmental immunity statute. The liability alleged here would not be an unacceptable interference with government's ability to govern. (See Justice MOODY's concurrence in *Perry, supra,* 200.)

Accordingly, summary judgment was improperly granted for defendant. We reverse and remand this case for further proceedings in accordance with this opinion.

Reversed and remanded. No costs, a public question.