ROUSE v STATE OF MICHIGAN

Docket No. 54127. Submitted June 12, 1981, at Lansing.—Decided
     August 19, 1981. Leave to appeal applied for.

Ernest Rouse, Jr., a resident of the Michigan School for the Deaf,
     by his next friend, Ernest Rouse, sued the State of Michigan for
     damages in the Court of Claims, alleging that he was assaulted
     by two fellow students in his dormitory room. Plaintiff alleged
     negligence on the part of defendant in placing him in the same
     room with the students who allegedly assaulted him and by
     failing to supervise and control those students. Defendant
     moved for summary judgment, claiming governmental immu-
     nity. At the hearing on the motion, plaintiff argued that the
     residential aspect of the operation of the school should not be
     entitled to governmental immunity because it is not a govern-
     mental function. The trial court found that both the educa-
     tional and residential aspects of the operation of the school are
     governmental functions entitled to immunity and granted de-
     fendant's motion for summary judgment, Jack W. Warren, J.
     Plaintiff appeals. *Held:*

     The residential operation of the school is sufficiently related
to the educational operation of the school, which is recognized
as a governmental function entitled to tort immunity, to share
that immunity.
     Affirmed.

GOVERNMENTAL IMMUNITY — STATES — TORTS — GOVERNMENTAL
     FUNCTION — SCHOOL FOR THE DEAF.

     The State of Michigan is immune from tort liability for injuries
     suffered by a student during an assault in a dormitory at the
     Michigan School for the Deaf because the residential operation
     of the school is sufficiently related to the educational operation
     of the school, which is recognized as a governmental function

REFERENCES FOR POINTS IN HEADNOTES
[1] 57 Am Jur 2d, Municipal School, and State Tort Liability § 11.
     Modern status of doctrine of sovereign immunity as applied to
     public schools and institutions of higher learning. 33 ALR3d 703.
     Tort liability of public schools and institutions of higher learning.
     86 ALR2d 489.

entitled to immunity from tort liability, to share in that immunity.

*Kurzman & Phelan,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Robert S. Welliver,* Assistant Attorney General, for defendant.

Before: DANHOF, C.J., and M. F. CAVANAGH and D. R. FREEMAN,* JJ.

PER CURIAM. Ernest Rouse, Jr., a resident of the Michigan School for the Deaf in Flint, Michigan, by his next friend, Ernest Rouse, sued the State of Michigan, alleging that he was assaulted by two fellow students who shared his dormitory room at the School for the Deaf. Plaintiff alleged that defendant was negligent in placing plaintiff in the same room with the two students who allegedly assaulted him and in failing to supervise and control those students.

Defendant filed a motion for summary judgment under GCR 1963, 117, contending that plaintiff's claim is barred by the principle of governmental immunity, MCL 691.1407; MSA 3.996(107). The trial judge heard oral argument on defendant's motion for summary judgment. Plaintiff's attorney did not appear, and the motion was granted. Within seven days of the grant of the motion, plaintiff's counsel filed a motion for rehearing of oral argument, alleging that his failure to appear was due to a scheduling error. Plaintiff's motion for rehearing was granted.

At the rehearing, plaintiff's counsel argued that even if the educational aspect of the Michigan School for the Deaf was a "governmental function"

---

* Circuit judge, sitting on the Court of Appeals by assignment.

under MCL 691.1407; MSA 3.996(107), and therefore entitled to governmental immunity under that statute, the residential aspect of the school was not. Counsel for defendant repeated her arguments that both the educational and residential aspects of the school were governmental functions entitled to immunity. After hearing the arguments of both counsel, the trial judge issued his opinion from the bench, finding that both the educational and residential aspects of the Michigan School for the Deaf were governmental functions entitled to immunity. Defendant's motion for summary judgment was granted. Plaintiff appeals as of right from the trial court's order.

The doctrine of governmental immunity in Michigan is presently embodied in MCL 691.1407; MSA 3.996(107), which provides:

"Except as in this act otherwise provided, all *governmental agencies* shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed." (Emphasis added.)

Plaintiff concedes that the Michigan School for the Deaf, being a component of the Michigan Department of Education, is a "governmental agency" under the foregoing section. MCL 691.1401(c), (d); MSA 3.996(101)(c), (d). The sole question which the parties dispute in this appeal is the definition of the statutory term "governmental function".

The parties acknowledge, in their briefs on appeal, that the Supreme Court justices have divided as to the standard for determining what consti-

tutes a governmental function under the foregoing section. An exhaustive review of the opinions discussing the definition of a governmental function is not necessary here. A survey of the criteria used by the justices of the Supreme Court, together with a brief review of the application of those criteria in the recent decisions of this Court, indicate that the trial court did not err in finding the residential aspect of the Michigan School for the Deaf to be a governmental function entitled to immunity.

Three of the justices of the Supreme Court define a governmental function as an activity which is "*sui generis* governmental—of [the] essence [of] governing * * * an activity * * * [which] can only be done by [the] government * * *". *Parker v Highland Park,* 404 Mich 183, 193-194; 273 NW2d 413 (1978) (plurality opinion by Justices FITZGERALD, T. G. KAVANAGH, and LEVIN). See also *Perry v Kalamazoo State Hospital,* 404 Mich 205, 215; 273 NW2d 421 (1978) (dissent by Justices T. G. KAVANAGH, LEVIN and FITZGERALD), *Pichette v Manistique Public Schools,* 403 Mich 268, 281; 269 NW2d 143 (1978), and *Thomas v Dep't of State Highways,* 398 Mich 1, 21; 247 NW2d 530 (1976) (dissent by Justices T. G. KAVANAGH and FITZGERALD; Justice LEVIN concurring in the dissent). This viewpoint was elaborated in *Thomas, supra,* as follows:

"The test then, of 'governmental function' for purposes of the immunity statute, must be phrased in terms of the nature of the specific function. We conclude that a function is not 'governmental' in this context unless the particular activity that this function entails is uniquely associated with those activities having 'no common analogy in the private sector because they reflect the imperative element in government, the

implementation of its right and duty to govern'. Thus, a government is immune only when it is planning and carrying out duties which, due to their peculiar nature, can only be done by a government. The mere fact that a governmental agency is doing a certain act does not make such act a 'governmental function' if a private person or corporation may undertake the same act. Thus, 'governmental function' is not delineated by questions of the broad scope of an activity undertaken or by financial or insurance considerations which may be indicative of a governmental undertaking, but rather by viewing the precise action allegedly giving rise to liability, and determining whether such action is *sui generis* governmental—of essence to governing." 398 Mich 1, 21 (dissenting opinion by Justices T. G. KAVANAGH and FITZGERALD). (Footnote omitted.)

Applying these standards in recent cases, Justices FITZGERALD, LEVIN and T. G. KAVANAGH found the following not to be governmental functions: (1) operation of a state mental hospital *(Perry, supra);* (2) operation of a general municipal hospital *(Parker, supra);* (3) operation of a school playground *(Pichette, supra);* (4) contracting out work on a highway construction project *(Thomas, supra).*

Justices COLEMAN, RYAN, and WILLIAMS interpret "governmental functions" as activities defined by common-law precedent at the time of the enactment of the governmental immunity statute. *Thomas, supra,* 8-9, *Parker, supra,* 203, *Perry, supra,* 211-212, and *Pichette, supra,* 287-290. These justices found that the operation of a municipal hospital *(Parker, supra),* a mental hospital *(Perry, supra),* a school playground *(Pichette, supra),* and highway construction *(Thomas, supra),* were governmental functions entitled to immunity. In each case, the justices noted that the activities were intended to promote the general public health or

welfare and were exercised "for the common good of all", *Perry, supra,* 213, *Parker, supra,* 204, *Pichette, supra,* 288-290, *Thomas, supra,* 11-12.

With the foregoing three-to-three split between the justices, the opinions of the seventh justice, Justice Moody, are critical. Justice Moody did not discuss his definition of "governmental function" in *Pichette, supra,* 403 Mich 268, 287. It was in *Parker, supra,* that he first set forth his interpretation. Justice Moody agreed with Justices Fitzgerald, Levin, and T. G. Kavanagh that the second sentence of the statutory immunity provision should not be regarded as preserving immunity according to the common law as it existed at the time of the statute's enactment. 404 Mich 183, 199.

Justice Moody observed in *Parker:*

"Participation of modern government in our everyday existence is so pervasive that any presumption must rightly run to government responsibility and consequent liability rather than to immunity. Present realities dictate viewing immunity as a privilege, limited to those activities uniquely associated with governmental enterprise.

\* \* \*

"To delineate a complete and balanced definition of governmental function within a simplistic format would be presumptuous. However, as a basic guideline, the crux of the governmental essence test should be founded upon the inquiry *whether the purpose, planning and carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by the government.* Unless liability would be an unacceptable interference with government's ability to govern, activities that fall outside this perimeter, although performed by a government agency, are not governmental functions and therefore not immune." *Parker v Highland Park,* 404 Mich 183, 199-200 (Justice Moody, concurring). (Emphasis added.)

Summarizing, Justices T. G. KAVANAGH, LEVIN, and FITZGERALD limit governmental functions to those which are *"sui generis* governmental" or "activity [which] can only be done by [the] government". Justices COLEMAN, RYAN, and WILLIAMS interpret "governmental functions" as those activities conducted "for the common good of all" under the common-law precedent existing at the time of the enactment of the immunity statute. Justice MOODY would find immunity where liability would be an unacceptable interference with the ability to govern and where the government is the only agency which can effectively accomplish the goals of the activity in question "due to its unique character or governmental mandate".

The parties in the instant appeal dispute whether the residential function of the school must be considered independent from the educational function of the school, which plaintiff concedes is a governmental function. Plaintiff contends that the residential aspect of the Michigan School for the Deaf is "little more than a baby-sitting function undertaken by the [s]tate merely as a convenience, and which contributes little or nothing to the educational purpose mandated by our legislature". Plaintiff goes on to argue that the residential aspect is neither necessary nor helpful to the function of providing special education for the deaf and concludes that it should be considered separately.

Defendant, on the other hand, contends that the housing of deaf students is a continuation of the educational function of the school. According to defendant, "the only way a centralized school can function is to feed and house the students". Defendant argues that the educational and residential functions are related, citing *Jacobs v Dep't of*

*Mental Health,* 88 Mich App 503; 276 NW2d 627 (1979), where this Court considered whether an alleged assault committed by an attendant against a patient at a state mental facility was a governmental function. In *Jacobs,* the Court observed:

"Plaintiff's reliance on *Galli v Kirkeby* is misplaced. That case only held that an activity which bears no arguable relationship to a governmental function cannot be an exercise or discharge of that governmental function. In the present case, under the circumstances related in the attendant's deposition, which circumstances plaintiff has not refuted by pleading, deposition, affidavit or other documentary evidence, the alleged assault and battery by the attendant was *sufficiently related* to the function of the mental facility to be an exercise or discharge of it." (Footnote omitted.) 88 Mich App 503, 506. (Emphasis added.)

Applying the foregoing language, together with Justice Moody's criteria, defendant concludes that the residential function "bears a sufficient relationship" to the educational function and is therefore entitled to immunity. We agree.

In *Perry, supra,* Justice Moody specifically relied on the mandate of Const 1963, art 8, § 8 and MCL 330.1116; MSA 14.800(116), declaring that "services for the care, treatment, or rehabilitation of those who are seriously mentally handicapped shall always be fostered and supported". 404 Mich 205, 214. Justice Moody, applying the test which he had formulated in *Parker, supra,* found in these provisions a governmental mandate that the activity in question (operating a mental hospital) could only be effectively accomplished by the government.

*Perry, supra,* provides a striking parallel with the present case. Defendant directs this Court to consider the same constitutional provision. Defen-

dant also cites MCL 393.51, 393.65; MSA 15.1401, 15.1415, which provide:

"Sec. 1. That there shall continue to be maintained the institution located at Flint for educating the deaf and dumb, which shall be known as the Michigan school for the deaf." MCL 393.51; MSA 15.1401.

"Sec. 15. There shall be received in said school, as pupils, all such deaf children and partially deaf children whose defective hearing prevents them from receiving instruction in the common schools, to remain not beyond 21 years of age, as are in suitable condition of body and mind to receive instruction, and who are residents of this state, * * * without charge for tuition, boarding, lodging, or washing and without charge for such health services as may be established by the board of trustees: Provided, That any dependent child enrolled who is in need of surgery, medicines or medical attendance not available through the school's established program and for whom circumstances make such services impossible under any other act shall receive the necessary surgery and treatment at the school's expense: provided further, The board of trustees may substitute transportation in lieu of boarding, lodging, washing and other similar resident-school-services for those children who live within a radius of 10 miles of the school and whose educational opportunities would not be jeopardized by such substitution: And provided further, The board of trustees may in their discretion admit persons over 21 years of age under such conditions as may be deemed appropriate; and the trustees may admit children from any other state, but in such cases shall fix a tuition fee that is sufficient to cover all necessary expenses." MCL 393.65; MSA 15.1415.

Defendant emphasizes the distinction between the housing of students at MSD and residential housing of students at other state-supported institutions, such as colleges. The foregoing statute reflects the Legislature's mandate that the state's deaf children are to be educated at one centralized

school at Flint. The text of MCL 393.65; MSA 15.1415 suggests that the Legislature regarded the centralization of the special education program to be an important and beneficial feature. Thus, by mandate, the educational and residential functions are "related".

A decision by this Court affirming the trial court's judgment would not be inconsistent with its other recent decisions on the subject. In *Deaner v Utica Community School Dist,* 99 Mich App 103; 297 NW2d 625 (1980), this Court applied the reasoning of Justice MOODY in *Parker, supra,* to find that a school district was entitled to governmental immunity against the claim that a student was injured while participating in a high school wrestling class. The Court specifically relied on the factors used by Justice MOODY to distinguish mental hospitals from general hospitals. *Deaner, supra,* 108. The Court noted that the government plays a pervasive role in the area of education and that the constitution mandates education as a public policy. *Id.*

On the other hand, this Court has found various activities not to be governmental functions where they could be effectively accomplished by agencies other than the government because the activities were neither of a unique governmental character nor the subject of a governmental mandate. *Berkowski v Hall,* 91 Mich App 1; 282 NW2d 813 (1979) (municipally operated emergency medical services program), *Daugherty v Michigan,* 91 Mich App 658; 283 NW2d 825 (1979), *lv den* 408 Mich 853 (1980) (operation of recreational area), *Ross v Consumers Power Co,* 93 Mich App 687; 287 NW2d 319 (1979), *lv gtd* 408 Mich 959 (drainage district not immune from liability arising out of construction of drain), *Peter Bill & Associates, Inc v Dep't*

*of Natural Resources,* 93 Mich App 724; 287 NW2d 334 (1979) (determination of DNR to approve or disapprove the salvaging of materials located on state land; court found state's act in protecting its property rights no different from those of private property owners), *Rubino v Sterling Heights,* 94 Mich App 494; 290 NW2d 43 (1979) (operation of municipal water system), *Keenan v Secretary of State,* 103 Mich App 82; 302 NW2d 602 (1981) (administration of a driver's license examination), *Cronin v Hazel Park,* 88 Mich App 488; 276 NW2d 922 (1979) (operation of a rollerskating program by recreation department of municipal corporation not entitled to immunity).

Only *Deaner, supra,* is similar to the present case. In *Deaner,* as in *Perry,* the Court relied upon the fact that the activities in question were the subject of a governmental mandate, a factor which is critical under the analysis of Justice MOODY. Given the foregoing pattern of decisions interpreting the statutory term "governmental function", this Court affirms the trial court's finding that the residential operation of the Michigan School for the Deaf is a governmental function entitled to governmental immunity.

Affirmed. No costs.