TREZZI v CITY OF DETROIT

Docket No. 58039. Submitted March 15, 1982, at Detroit.—Decided
    October 18, 1982. Leave to appeal granted, 417 Mich __.

Plaintiff Elvera Trezzi, administratrix of the estates of Rosa and
    Gino Brigolin, deceased, brought an action against the City of
    Detroit and Philip Torbit and others for damages resulting
    from the death of plaintiff's decedents and arising out of a fact
    situation involving the city's operation of the "911" emergency
    call system. The Wayne Circuit Court, Charles Kaufman, J.,
    granted a summary judgment to the city based upon a claim of
    governmental immunity. Defendant Torbit made a settlement
    with the plaintiff and the claim against the unidentified 911
    operators was dismissed. Plaintiff appeals from the order grant-
    ing the summary judgment contending that the trial court
    erred in finding that the operation of the 911 system for police
    emergency calls constitutes a governmental function and in
    granting the city's motion for a summary judgment as to
    plaintiff's claim that the 911 operators and defendant Torbit,
    the police dispatcher, committed intentional torts. *Held:*

    1. The operation of a police department is an essentially
    unique activity which can be effectively accomplished only by
    the government and, therefore, is a governmental function
    entitled to immunity from tort liability.

    2. The activity of the 911 emergency call system involved
    here is essentially a unique activity associated with the opera-
    tion of the police department and to which governmental
    immunity must be extended.

    3. The operation of an emergency dispatch system is an
    indispensable part of the operation of a police department
    necessarily involving decision-making concerning the serious-
    ness of each call for police assistance and the order of priority

REFERENCES FOR POINTS IN HEADNOTES
[1] 61A Am Jur 2d, Pleading §§ 230, 231.
[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 314.
[3-5, 7, 8] 57 Am Jur 2d, Municipal, School, and State Tort Liability
    § 243.
[6] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 79,
    90.

for response which should be attached to those calls. None of these activities have a common analogy in the private sector.

4. The trial court did not err in granting defendant city's motion for a summary judgment on plaintiff's claim that the 911 system was operated negligently. The pleadings fail to state a claim in avoidance of immunity.

5. The trial court did not err in granting a summary judgment as to plaintiff's claim that the 911 operators and the police dispatcher committed intentional torts. Plaintiff's allegations claim, at best, negligence and do not allege sufficient facts to make out a claim for an intentional tort. The operators and dispatcher were engaged in activity that was in the exercise or discharge of a governmental function and, thus, defendant city is immune from liability.

Affirmed.

BRONSON, J., concurred in part and dissented in part. He concurs with the conclusion that plaintiff's complaint fails to set forth a legally cognizable intentional tort claim. He disagrees, however, with the conclusion that the operation of a 911 emergency system constitutes a governmental function. He disagrees with the characterization of the 911 system as being part and parcel of the police department. He feels that, even if some benefits do flow from handling requests for police assistance through a 911 system, this does not make the system indispensable or a governmental function. He concludes that the policing function can effectively be carried out without the 911 emergency system and that such an emergency system effectively could be carried out through the private sector if necessary. He would reverse.

OPINION OF THE COURT

1. JUDGMENTS — SUMMARY JUDGMENTS — COURT RULES.

The purpose of a motion for summary judgment based upon a failure to state a claim upon which relief can be granted is to test the complaint to determine whether a plaintiff has pled facts which support a cause of action; the scope of the examination is confined to the pleadings while the factual allegations of the complaint are taken as true, along with inferences and conclusions which may fairly be drawn from the facts alleged (GCR 1963, 117.2[1]).

2. GOVERNMENTAL IMMUNITY — AVOIDANCE OF IMMUNITY — PLEAD-ING.

A plaintiff faced with a defendant's motion for summary judg-

ment based upon governmental immunity has the burden of pleading facts in avoidance of that immunity.

3. GOVERNMENTAL IMMUNITY — TORTS — MUNICIPAL CORPORATIONS — POLICE DEPARTMENTS.

The operation of a police department is a governmental function entitled to immunity from tort liability since the police perform an essentially unique activity which can be effectively accomplished only by the government (MCL 691.1407; MSA 3.996[107]).

4. MUNICIPAL CORPORATIONS — POLICE DEPARTMENTS — EMERGENCY DISPATCH SYSTEMS.

The operation of an emergency dispatch system is an indispensable part of the operation of a police department.

5. GOVERNMENTAL IMMUNITY — TORTS — MUNICIPAL CORPORATIONS — POLICE DEPARTMENTS — EMERGENCY DISPATCH SYSTEMS.

The operation of an emergency dispatch system is essentially a unique activity associated with the operation of a police department to which immunity from tort liability must be extended since it is related to a governmental function where the operation of the system involves decision-making concerning the seriousness of each call for police assistance and the order of priority for response which should be attached to those calls.

6. GOVERNMENTAL IMMUNITY — INTENTIONAL TORTS — NEGLIGENCE.

An intentional tort is not within the exercise or discharge of a governmental function within the meaning of the governmental tort liability act, however, negligent performance in the exercise or discharge of a governmental function is within the meaning of the act (MCL 691.1407; MSA 3.996[107]).

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY BRONSON, J.

7. MUNICIPAL CORPORATIONS — EMERGENCY CALL SYSTEMS — POLICE DEPARTMENTS — INDISPENSABLE OPERATIONS.

*A city's operation of an emergency call system handling emergency calls for police, fire and medical assistance is not indispensable to the operation of a police department since the policing and dispatching functions could be carried out based on direct calls to the policing agency without the emergency call system.*

8. GOVERNMENTAL IMMUNITY — TORTS — MUNICIPAL CORPORATIONS — EMERGENCY CALL SYSTEMS — GOVERNMENTAL FUNCTION.

*A city's operation of an emergency call system handling emer-*

*gency calls for police, fire and medical assistance does not constitute a governmental function for purposes of immunity from tort liability since the policing function can effectively be carried out without the emergency system and such emergency system could be carried out through the private sector if necessary (MCL 691.1407; MSA 3.996[107]).*

*Lopatin, Miller, Freedman, Bluestone, Erlich & Rosen* (by *Steven G. Silverman),* for plaintiff.

*Kenneth L. Lewis,* Assistant Corporation Counsel, for defendant.

Before: DANHOF, C.J., and BRONSON and J. R. ERNST,* JJ.

DANHOF, C.J. Plaintiff appeals as of right from an order granting a summary judgment to the City of Detroit (hereinafter defendant) pursuant to GCR 1963, 117.2(1) on the basis of governmental immunity.

Plaintiff's complaint arose out of defendant's operation of an emergency call and dispatch system known as the "911" emergency system. Defendant employs operators to take 911 emergency calls from the public. These operators attach priority ratings to each call based upon its nature and police units are dispatched in accordance with the priority ratings.

The complaint avers that on April 23, 1978, several 911 calls were made to unidentified operators, requesting emergency assistance at the home of plaintiff's decedents. Plaintiff alleges the 911 operators attached an unjustifiably low priority rating to these calls and passed them on to defendant Philip Torbit, the police dispatcher, who failed to dispatch police vehicles for approximately 1-1/2 hours after receiving the first call. Plaintiff's

_____

* Circuit judge, sitting for the Court of Appeals by assignment.

complaint asserts that as a result, Rosa and Gino Brigolin sustained numerous injuries that resulted in their deaths.

When defendant filed its motion for summary judgment, contending that plaintiff's claim is barred by the principle of governmental immunity, plaintiff responded with an amended complaint that re-alleged the defendant's and its employees' negligence. In addition, plaintiff charged that defendant's intentional and wanton misconduct caused the death of plaintiff's decedents. The trial court found that the 911 system is part of the Detroit Police Department, which is a governmental function immune from tort liability. It also ruled that plaintiff's amended complaint did not plead sufficient facts to allege intentional wrongdoing by defendant or its employees. Defendant Torbit made a settlement with plaintiff and the claim against the unidentified 911 operators was dismissed. From the trial court's order of summary judgment in favor of the defendant, plaintiff raises two issues on appeal.

Initially we note that the purpose of a motion for summary judgment based on GCR 1963, 117.2(1) is to test the complaint to determine whether a plaintiff has pled facts which support a cause of action. The scope of the examination is confined to the pleadings; factual allegations of the complaint are taken as true, along with any inferences and conclusions which may fairly be drawn from the facts alleged. *Rubino v Sterling Heights,* 94 Mich App 494; 290 NW2d 43 (1979). When governmental immunity forms the basis of the motion, a burden rests upon the plaintiff to plead facts in avoidance of immunity. *Fuhrmann v Hattaway,* 109 Mich App 429; 311 NW2d 379 (1981).

Plaintiff argues that the court erred in finding

that the operation of a 911 system for police emergency calls constituted a governmental function. In analyzing this issue, we first determine whether defendant was engaged in a governmental function entitled to immunity from tort liability under MCL 691.1407; MSA 3.996(107). This statute provides:

> "Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

The term "governmental function" is not defined in the statute. Of necessity, the determination of which activities may be classified as governmental functions is a task left to the courts by the Legislature. *Keenan v Secretary of State,* 103 Mich App 82; 302 NW2d 602 (1981). The Supreme Court is split on the interpretation of this statutory term, usually deciding whether particular activities are governmental functions on a case-by-case basis. Since this case involves an operational aspect of the Detroit Police Department, as opposed to a decisional or planning aspect, Justices KAVANAGH, FITZGERALD and LEVIN, using the "of essence to governing" test, would find that no governmental function was involved in the act alleged to have been negligently performed. See *Thomas v Dep't of State Highways,* 398 Mich 1, 22; 247 NW2d 530 (1976) (dissenting opinion of KAVANAGH, C.J., and FITZGERALD, J.). Conversely, using a common-law analysis, Chief Justice COLEMAN, and Justices RYAN and WILLIAMS would find that the operation

of a police department is a governmental function. *Berger v Berkley,* 87 Mich App 361; 275 NW2d 2 (1978), *lv den* 406 Mich 969 (1979).

Therefore, Justice Moody's position on governmental immunity is the key to understanding how the Supreme Court would resolve this issue. On the basis of *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978), we conclude that the operation of a police department presents factors that would make such activity governmental under Justice Moody's broader statement of the governmental essence test.

The government plays a pervasive role in providing for the public peace and for the safety of persons and property. MCL 117.3(j); MSA 5.2073(j); Detroit Charter, art 7, ch 11, § 7-1101. Municipal budgets include substantial appropriations for police services. Police officers are exclusively vested with powers and duties, too numerous to list, essential for the protection of public peace and safety. In short, the police perform an essentially unique activity which can be effectively accomplished only by the government. It would be incongruous to find that the operational activities of a police department are other than governmental. Therefore, we find that the operation of a police department is a governmental function entitled to immunity. *Berger, supra; McPherson v Fitzpatrick,* 63 Mich App 461; 234 NW2d 566 (1975).

Since the police function is governmental, we must next determine whether the particular activity at issue is related to the governmental function. If it is, immunity is warranted. See, for example, *Rouse v Michigan,* 109 Mich App 21; 311 NW2d 144 (1981). Operation of an emergency dis-

patch system is an indispensable part of the operation of a police department. Furthermore, the operation of such a system necessarily involves decision-making concerning the seriousness of each call for police assistance and the order of priority for response which should be attached to those calls. None of these activities have a "common analogy in the private sector". *Parker, supra*, p 200. The fact that the operation of a 911 system may also involve the performance of other services which are unrelated to the activities discussed above is irrelevant. We are only concerned with whether this particular activity constitutes a governmental function. *Cobb v Fox*, 113 Mich App 249, 255; 317 NW2d 583 (1982). Accordingly, we are of the opinion that the activity involved here is essentially a unique activity associated with the operation of a police department and that immunity must be extended.

Plaintiff's reliance on *Berkowski v Hall*, 91 Mich App 1; 282 NW2d 813 (1979), is misplaced. In *Berkowski*, a panel of this Court ruled that a municipality's operation of emergency medical services (EMS) units is not of essence to governing. *Berkowski* is distinguishable in that the government does not have sole responsibility for providing on-the-scene emergency medical service. Defendant rightfully points out that the government receives substantial competition in this area from private ambulance companies. There is no common analogy to a police department in the private sector. The trial court did not err in granting defendant's motion for a summary judgment on plaintiff's claim that the 911 system was operated negligently. The pleadings fail to state a claim in avoidance of immunity.

The second issue on appeal is whether the trial

court erred when it granted defendant's motion for a summary judgment as to plaintiff's claim that the 911 operators and the police dispatcher committed intentional torts. In *Lockaby v Wayne County*, 406 Mich 65; 276 NW2d 1 (1979), in four opinions, the Supreme Court found that immunity does not extend to intentionally tortious acts committed by a defendant's agents, since such acts are not within "the exercise or discharge of a governmental function".[1]

Plaintiff contends that the unnamed 911 operators committed an intentional tort by assigning the 911 calls an unduly low priority rating. Nowhere in the complaint or the amended complaint does it appear that the 911 operators intentionally gave the 911 calls a lower priority with the knowledge that harm would result to the subjects of the calls. Similarly, the amended complaint alleges only that the police dispatcher "failed to dispatch police vehicles for approximately 1-1/2 hours after receiving the first call for emergency assistance". Each of these allegations claim, at best, negligence of the 911 operators and the dispatcher in failing to correctly interpret the 911 calls and failing to

---

[1] This statement is correct in explaining the ultimate holding as applied to the unique facts of *Lockaby*. However, Justice WILLIAMS would add a caveat:

"[Justice LEVIN's] opinion, citing *McCann v Michigan*, 398 Mich 65; 247 NW2d 521 (1976), states that 'a majority of the Court agreed that an intentional tort was not in the exercise or discharge of a governmental function'. The statement is not incorrect as explaining the ultimate holding under the facts of *McCann*, but I do not read *McCann* as authority for the broad proposition that intended conduct which harms another is never protected by governmental immunity. A tort is a civil wrong and conduct which is wrong within one setting can be permissible within another. For example, a police officer may not intentionally strike a citizen peacefully walking down the street, but his duty may require the police officer to intentionally strike another citizen to prevent him from murdering a third peaceful citizen. Further, *McCann* clearly sets limits that the conduct must be without and not within the scope of the exercise and discharge of a governmental function." 406 Mich 82-83.

dispatch police vehicles quickly. Further, as a matter of law, neither the allegation against the 911 operators nor the allegation against the police dispatcher alleges sufficient facts to make out a claim for an intentional tort. Therefore, the operators and the dispatcher were engaged in activity that was in the exercise or discharge of a governmental function. Thus, defendant is immune. The trial court did not err in granting summary judgment on this issue.

Accordingly, we find that the City of Detroit is protected by the cloak of governmental immunity. The trial court did not err in ruling that the plaintiff had failed to allege sufficient facts in avoidance of governmental immunity.

Affirmed. No costs, a public question.

J. R. ERNST, J., concurred.

BRONSON, J. *(concurring in part and dissenting in part).* I concur in the majority's conclusion that plaintiff's complaint fails to set forth a legally cognizable intentional tort claim. Rather, the intentional tort count really avers acts of gross negligence rather than intentional misconduct on the part of the 911 operators.

I do not agree, however, with the majority's conclusion that the operation of a 911 emergency system constitutes a governmental function. Initially, I disagree with the majority's characterization of the 911 system as somehow being part and parcel of the police department. The 911 emergency system handles emergency calls for police, fire, and medical assistance. The system is staffed by civilians employed by the City of Detroit. It is designed to make emergency assistance more effective by freeing up fire and police personnel for regular duty and by using one simple three-digit

telephone number, enabling the citizenry to make immediate requests for assistance as needed. It is easier to remember "911" than separate seven-digit numbers for the local police precinct and firehouse. The 911 system is not the police department, however, but rather, serves a limited function as a clearinghouse for all emergency calls for assistance.

I agree with the majority that Justices KAV-ANAGH, FITZGERALD, and LEVIN would hold that the operation of a 911 emergency system does not constitute a governmental function. The operation of a 911 system, like the operation of almost anything else, could be carried out by the private sector. See, the dissenting opinions in *Thomas v Dep't of State Highways,* 398 Mich 1; 247 NW2d 530 (1976). I further agree with the majority's statement that Chief Justice COLEMAN and Justices RYAN and WILLIAMS would use a common-law approach to determine if a particular activity constitutes a governmental function. *Thomas, supra,* pp 9-10. Under this approach, I also conclude that the management and operation of a publicly run emergency system which takes calls for police assistance would come within the scope of governmental immunity at common law as incident to the operation of the police department.

Thus, I also agree with the majority that analysis of Justice MOODY's position on governmental immunity is necessary to ascertain how the Supreme Court would resolve this issue. In *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978), Justice MOODY accepted an "essence of government standard" for resolving governmental immunity issues. However, unlike Justices KAVANAGH, FITZGERALD, and

Levin, who essentially believed that "planning" and policy decisions constituted "the essence of government", while operational aspects generally did not, Justice Moody proposed to resolve governmental immunity problems by asking whether the particular function can only be *effectively* accomplished by government. Thus, a general municipal hospital was not a governmental function, but, because of lack of competition from the private sector, state responsibility for placement of mentally ill persons, the need to segregate mentally ill patients, and the substantial financial commitment made by the state to combat mental illness, the operation of a publicly run mental health hospital was immune from tort liability.

The majority states that: "Operation of an emergency dispatch system is an indispensable part of the operation of a police department". If the 911 system is "indispensable" to police operations, how did Detroit manage to muddle through the many decades in which no such system existed? How do the many communities which still do not have 911 systems cope without this "indispensable" service? That which is indispensable for any police department to be effective is some system for taking complaints and dispatching personnel. Before the institution of the 911 system, the Detroit Police Department was able to do this. I am sure that the police department could effectively do this now if it chose to do so.

All the 911 system really serves to do is to interpose another entity between the distressed citizen and the police. The complaint made by plaintiffs is that 911 operators, who are not police officers, assigned unjustifiably low priority ratings to plaintiff's decedents' calls for assistance. Had there been no 911 system, the decedents here

could have directly phoned a police dispatcher, and the senseless tragedy which occurred here might very well have been averted. I have no quarrel with the decision to implement a 911 system, however, whether it is really more effective than the former practice of citizens calling their local police precincts, I cannot say. I do contend, however, that even if some benefits do flow from handling requests for police protection through a 911 system, this does not make the system "indispensable" or a governmental function.

Detroit could have declined to use city employees to maintain a 911 system and taken bids from private security firms or answering services to maintain an emergency system. Had this been done, the only significant differences between that system and the one Detroit now employs is that privately employed personnel would assign the priority numbers to calls instead of non-police city employees and that victims who have suffered injury as a proximate cause of a privately employed emergency operator's negligence would undoubtedly have a cause of action. Moreover, but for the police department's refusal to dispatch cars except through the 911 system, any number of security firms could contract with members of the public to provide the same service. The city emphasizes the need to have trained personnel as 911 operators, but one need not be a city employee to be trained, and this action does not involve a claim against the city based on negligent training in any case.

The majority distinguishes *Berkowski v Hall,* 91 Mich App 1; 282 NW2d 813 (1979), which held that a municipality's operation of an emergency medical services (EMS) unit is not of essence to govern-

ing, by pointing out that the government receives substantial competition in the area of ambulance service while no common analogy to a police department is found in the private sector. By looking for a private sector police force, the majority really fails to focus on the purpose and function of the 911 system. Although the majority purports to distinguish, for purposes of governmental immunity, the overall operation of a police department from the specific activities involved here, it really fails to do so. After finding that the police function is governmental, the majority then states that "we must next determine whether the particular activity at issue is related to the governmental function". I suggest that this sort of examination of a particular activity has nothing to do with the current state of the law. What activities conducted by the police are not "related" to the governmental function? Even such activities as police athletic leagues are "related" to the sound functioning of a police department. Police involvement in these athletic programs has the effect of promoting the department's esteem with the public, and only when the public trusts, and works with, the police can they be truly effective. Under Justice MOODY's test, the important query is whether the activity can only be effectively accomplished by government, not whether the particular activity "relates" to some other function which is concededly within the ambit of governmental immunity. What we must determine is not whether there is a "common analogy to a police department in the private sector", but whether the policing function can only be effectively carried out if a city-run 911 emergency system exists. In my opinion, a 911 system is simply unnecessary. It may or may not facilitate the police department's dispatching function. In any case, the dispatching function could effectively

be carried out by simply sending out patrol cars based on the distressed citizens', or private security firms', direct calls to the policing agency.

There is no governmental mandate that some third party or agency stand between the police and the public when it comes to requests for police assistance. There do exist private security firms which will obtain police assistance upon a signal from their customers. Admittedly, as things currently stand, these firms will merely call 911, and not the police directly, to report a distress call. However, this is because the police department will only dispatch cars based upon 911 priority reports. Thus, although the private sector does not compete with the 911 system, this is not because it could not in the abstract, but because the city and the police department have precluded such competition by refusing to respond to citizen calls not routed through the 911 system. In *Perry, supra,* Justice MOODY found that publicly run state mental hospitals were entitled to the protection of the governmental immunity statute because, but for these hospitals, the legislatively mandated care and supervision of the mentally ill could not effectively be carried out. In this case, the police can easily carry out their policing function and dispatch their numbers without the existence of the 911 emergency system. By creating the 911 system, all the city has done is establish a new bureaucracy (without any negative connotations intended), separating the citizenry from the police, a bureaucracy which may be helpful, but is ultimately unnecessary to the police department's ability to respond effectively to calls for aid. In light of my beliefs that the policing function can effectively be carried out without the 911 emergency system, and that such an emergency system

effectively could be carried out through the private sector if necessary, I conclude that plaintiffs' analogy to *Berkowski, supra,* is sound and that Justice MOODY would not find the operation of a 911 emergency system to constitute a governmental function.[1] I would reverse.

---

[1] In this appeal, we are not dealing with a citizen's direct call to a police officer dispatcher. No claim is made that plaintiff's decedents phoned the police directly, and the police dispatcher delayed sending out an officer to investigate. A city in which the public directly talks to a police dispatcher has a far more persuasive case for governmental immunity. In such a situation, the police department is really being left to determine on its own the best way in which to attack the new crisis and to resolve how to perform its policing function. The 911 system, however, is staffed by civilian city employees and said employees' negligence in incorrectly assigning a priority status to a call is not the negligence of the police department. Rather, it is the negligence of an intermediary, another city agency. A city agency which, in my opinion, is unnecessary and performs a function which could be fulfilled by the private sector. It is entirely possible that any benefits obtained by a 911 emergency system are outweighed by the fact that experienced police officers are not dispatching personnel directly, so that tragedies such as occurred here result.