*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMY CROTEAU, Individually and as Personal
Representative of the ESTATE OF RICHARD A.
CROTEAU,

UNPUBLISHED
September 29, 2022

Plaintiff-Appellant,

v

No. 358422
Genesee Circuit Court
LC No. 20-114514-NO

CHARTER COMMUNICATIONS, INC., doing
business as SPECTRUM CABLE, INTRADO LIFE
& SAFETY, INC., MICHIGAN BELL
TELEPHONE COMPANY, doing business as AT&T
MICHIGAN, COMMUNICATIONS VENTURE
CORPORATION, doing business as INDIGITAL
TELECOM, and PENINSULA FIBER NETWORK
LLC,

Defendants-Appellees.

Before:  K. F. KELLY, P.J., and LETICA and RICK, JJ.

PER CURIAM.

Plaintiff Amy Croteau appeals by right the trial court's order granting summary disposition under MCR 2.116(C)(7) in favor of defendants Charter Communications, Inc., Intrado Life & Safety Inc., Michigan Bell Telephone Company, Communications Venture Corporation, and Peninsula Fiber Network LLC on the basis of statutory immunity.  Finding no errors warranting reversal, we affirm.

## I.  BASIC FACTS AND PROCEDURAL HISTORY[1]

On the evening of November 27, 2018, plaintiff and her husband, Richard Croteau, were at their home in Clayton Township in Genesee County, Michigan.  Richard began experiencing

---

[1] The facts presented are largely taken from plaintiff's complaint.

issues with his breathing, and a 911 call was made in an effort to get Richard immediate help. The call, however, was misrouted to the city of Clayton in Lenawee County, apparently as a result of a mislabeling of plaintiff and Richard's home address (both jurisdictions had plaintiff's identical street name). As a result of the incorrect address, there was a delay in dispatching emergency responders.[2] At some point in the evening, Richard died.

Plaintiff brought suit[3] alleging that the failure of defendants to properly communicate and update her correct home address in their databases and street guides was the proximate cause of Richard's death. Plaintiff alleged one count of "Negligence/Gross Negligence," one count of "Negligent and/or Grossly Negligent Infliction of Emotional Distress," and one count of loss of consortium.

Defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(8). In essence, defendants argued that they were immune from suit under § 1604 of the Emergency 9-1-1 Service Enabling Act, MCL 484.1101 *et seq.* (the "Act"). Under that section, service providers such as defendants are immune from civil liability except where it is shown their acts amounted to criminal, grossly negligent, or willful and wanton conduct. Defendants claimed plaintiff's complaint failed to set forth sufficient facts to state a claim that defendants acted with gross negligence.

The trial court granted defendants' motions, concluding plaintiff's complaint contained only conclusory allegations that defendants acted with gross negligence and did not allege specific facts to state such a claim. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a motion for summary disposition. *Zarzyski v Nigrelli*, 337 Mich App 735, 740; 976 NW2d 916 (2021). Summary disposition under MCR 2.116(C)(7) is appropriate because of "immunity granted by law." In a motion brought under MCR 2.116(C)(7), the Court "must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties." *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008). "The contents of the complaint must be accepted as true unless contradicted by the documentary evidence." *Id.* "If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide." *Id.*

---

[2] Plaintiff alleged the incorrect address caused a delay of "approximately 45 minutes." However, the 911 call recordings show that emergency responders arrived at plaintiff's home approximately 18 minutes after the 911 call was made.

[3] Charter Communications removed the case to federal district court on the basis of diversity jurisdiction. The district court remanded the case to state court finding that there was not complete diversity among the parties. On remand, plaintiff amended her complaint, which is the subject of this appeal.

A motion for summary disposition under MCR 2.116(C)(8) "tests the legal sufficiency of the complaint." *Maple Manor Rehab Ctr v Dep't of Treasury*, 333 Mich App 154, 162; 958 NW2d 894. "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999) (quotation marks and citation omitted). "The court considers only the pleadings, and it considers them in a light most favorable to the nonmoving party, accepting as true all well-pleaded factual allegations." *Maple Manor*, 333 Mich App at 163.

## III. DISCUSSION

The core issue this Court is asked to decide is whether plaintiff's complaint alleged facts sufficient to overcome immunity granted to defendants under MCL 484.1604. Plaintiff contends Michigan is a notice pleading state and, therefore, she meets her burden if she reasonably puts defendants on notice of her claims. While this assertion is, by its own terms, an accurate statement of the law, plaintiff ignores the requirement that her complaint must nevertheless set forth factual allegations that would state a claim for the relief she seeks. Plaintiff's complaint falls short in this regard and, accordingly, we affirm the trial court's order.

We begin our analysis with the words of the statute itself. *Scugoza v Metro Direct Prop & Cas Ins Co*, 316 Mich App 218, 223; 891 NW2d 274 (2016). The relevant statute is MCL 484.1604, which states:

> Except for pro rata charges for the service during a period when the service may be fully or partially inoperative, a service supplier, public agency, PSAP, or an officer, agent, or employee of any service supplier, public agency, or PSAP, or an owner or lessee of a pay station telephone shall not be liable for civil damages to any person as a result of an act or omission on the part of the service supplier, public agency, PSAP, or an officer, agent, or employee of any service supplier, public agency, or PSAP, or an owner or lessee in complying with any provision of this act, unless the act or omission amounts to a criminal act or to gross negligence or willful and wanton misconduct.

As alleged in plaintiff's complaint, defendants are "service supplier[s]" as defined by statute, because they "provid[e] a communication service to a service user in this state." See MCL 484.1102(ii).

By virtue of defendants' roles as service suppliers, they are immune from civil liability unless plaintiff can show defendants "act[s] or omission[s]" rose to the level of "gross negligence."[4] See MCL 484.1604. The Act does not define the term "gross negligence." Our courts have, in other contexts, turned to the definition of the term set forth in the government tort liability act (GTLA), MCL 691.1401 *et seq.* See *Jennings v Southwood*, 446 Mich 125, 136; 521 NW2d 230 (1994) (adopting from the GTLA the definition of gross negligence for purposes of the emergency medical services act, MCL 333.20901 *et seq.*); see also *Xu v Gay*, 257 Mich App 263,

---

[4] Plaintiff does not contend that defendants' conduct was criminal or willful and wanton.

269; 668 NW2d 166 (2003) (collecting other examples of statutes in which the Court has adopted the GTLA's definition). Under the GTLA, gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a); see also *Wood v Detroit*, 323 Mich App 416, 424; 917 NW2d 709 (2018) (stating that gross negligence suggests "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks") (quotation marks and citation omitted). As relevant here, factual allegations that a party acted negligently is insufficient to demonstrate that the party also acted with gross negligence. *Chelsea Investment Group LLC v Chelsea*, 288 Mich App 239, 265; 792 NW2d 781 (2010).

Defendants urge the Court to analyze this case under the holding of *Trezzi v Detroit*, 120 Mich App 506; 328 NW2d 70 (1982),[5] which they claim demonstrates the inadequacy of plaintiff's complaint. In that case, this Court addressed whether the defendant was immune from suit under governmental immunity after it was shown that the 911 dispatch placed a low priority on an emergency call, resulting in a lengthy response time. *Trezzi*, 120 Mich App at 509-510. While defendants are correct that this Court concluded the defendant was immune from suit, it was on the basis that the plaintiff failed to allege the defendant committed an intentional tort. See *id*. at 515 ("[A]s a matter of law, neither the allegation against the 911 operators nor the allegation against the police dispatcher alleges sufficient facts to make out a claim for an intentional tort."). Accordingly, we are not persuaded that *Trezzi* forecloses plaintiff's avenue to relief.

We find more persuasive *Jackson v Saginaw Co*, 458 Mich 141; 580 NW2d 870 (1998). In *Jackson*, the plaintiff, an inmate in the Saginaw County Jail, alleged that the county, the sheriff, and his treating physicians were grossly negligent when they denied him medical care by delaying specialized treatment for throat and ear pain and thereby failing to promptly detect the plaintiff's throat cancer. *Jackson*, 458 Mich at 143. The trial court granted summary disposition in favor of the defendants on the basis of governmental immunity, but this Court reversed that decision as to a treating physician, Dr. Uy, concluding "reasonable minds could differ as to whether his conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted." *Id*. at 145 (quotation marks and citation omitted). Specifically, this Court determined that Dr. Uy's "failure to perform a laryngoscopic examination was sufficient to raise a question regarding gross negligence." *Id*. at 150.

The Michigan Supreme Court reversed this Court's determination that the plaintiff sufficiently demonstrated Dr. Uy's conduct amounted to gross negligence. *Id*. at 152. The Supreme Court found it unreasonable to infer that "assuming arguendo that Dr. Uy should have referred the plaintiff for a laryngoscopic examination sooner, his lack of doing so could demonstrate such a substantial lack of concern." *Id*. at 151 (footnote omitted).

In this case, plaintiff alleged that defendants "did not properly communicate with each party to direct the connection, disconnection or rearrangement of the 911 Authority's circuits, services or other equipment to reflect the Croteau family address," and "did not correctly provide

---

[5] Opinions published by this Court before November 1, 1990, are not binding but may be considered for their persuasiveness. *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

or update the Public Safety Answering Point (PSAP) and/or the Master Street Address Guide (MSAG) to reflect the Croteau family address." These are the only factual allegations relevant to defendants' conduct being potentially grossly negligent. But as in *Jackson*, defendants' failure to promptly communicate and update plaintiff's address does not evidence a substantial lack of concern on their part. At most, it demonstrates a potentially negligent mistake made by defendants in confusing Clayton in Lenawee County with Clayton Township in Genesee County. This is insufficient to overcome defendants' assertion of immunity under the Act.

The cases cited by plaintiff are unpersuasive. Plaintiff principally relies on *Ray v Swager*, 501 Mich 52, 60; 903 NW2d 366 (2017), and *Estate of Greene v Choroba*, unpublished per curiam opinion of the Court of Appeals, issued May 20, 2021 (Docket No. 353109),[6] to argue her amended complaint stated a claim for gross negligence. In *Ray*, the defendant, a coach of a high school cross-country team, instructed his team to cross a two-lane highway during a dark, early morning run, even though the "Do Not Walk" sign was illuminated and an oncoming car could be seen. *Ray*, 501 Mich at 59-60. The plaintiff, who was running near the back of the group, was struck by the car and severely injured. *Id*. at 60. The trial court denied summary disposition in the defendant's favor, stating the question of whether he was grossly negligent was a question of fact for the jury. *Id*. at 60-61. This Court reversed, concluding that reasonable minds could not differ on the issue of whether the defendant was the proximate cause of the plaintiff's injuries. *Id*. at 61. Although the Michigan Supreme Court reversed this Court's opinion, *Ray* is unhelpful to plaintiff because as specifically stated that "the issue of whether defendant was grossly negligent is not presently before this Court." *Id*. at 62. Accordingly, the factual similarities of *Ray*, to the extent there are any, fails to persuade us that plaintiff's allegations were sufficient to overcome defendants' assertion of immunity.

*Greene* is equally unhelpful, albeit for different reasons. There, the defendant, a 911 call dispatcher in Canton, Michigan, did not notice multiple calls from the Heartland Health Care Center where the plaintiff was a patient and was suffering a heart attack. *Greene*, unpub op at 1. Evidence demonstrated that the defendant's audio for the incoming calls was muted and that the defendant missed onscreen visual prompts for incoming calls because he was watching videos on his cellular telephone. *Id*. at 1-2. In addition, the 911 dispatchers had been specifically instructed to ensure the audio was turned up at the beginning of their shifts because of a documented history of dispatchers turning down the volume. *Id*. at 2. The trial court denied cross-motions for summary disposition on the issue of whether the defendant was grossly negligent, and the defendant appealed. *Id*. at 2-3.

This Court affirmed the trial court's order denying the defendant's motion, stating that the plaintiff presented sufficient evidence to create a question of fact regarding the defendant's gross negligence. *Id*. at 4. Because the defendant failed to ensure the volume for calls was audible, failed to notice onscreen prompts for incoming calls, and was previously reprimanded for

---

[6] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

improperly logging into his workstation, there was a question of fact as to whether the defendant was grossly negligent. *Id*. at 4-5.

The differences between this case and *Greene* are plain. In this case, plaintiff's factual allegations can be summed up as scrivener's error or a misnomer in documenting plaintiff's correct address. Unlike *Greene*, there are no allegations that defendants failed to alert to the error because of dereliction of duty. Similarly, unlike *Greene*, the amended complaint does not allege that defendants were on notice of similar issues with miscited addresses causing dispatch delays. In other words, the relevant facts in *Greene* are simply not present in this case and, in addition to *Greene* not being binding on this Court, it fails to dictate a result different from the trial court's decision.

The fact that Michigan is a "notice-pleading state," see *Johnson v QFD, Inc*, 292 Mich App 359, 368; 807 NW2d 719 (2011), does not save plaintiff's complaint. It is well settled that "conclusory allegations are insufficient to state a cause of action; the cause of action must be supported by factual assertions." *Wolfenbarger v Wright*, 336 Mich App 1, 16; 969 NW2d 518 (2021). Thus, plaintiff's assertion that she met her burden to overcome defendants' claim of immunity by simply putting them on notice that she was making a claim of gross negligence is incorrect. In addition to informing defendants of the nature of her claims, plaintiff was required to allege sufficient facts to support her conclusory allegations that defendants acted with gross negligence. She did not.

Plaintiff's claim that the trial court employed the incorrect standard when deciding the motions for summary disposition is equally unpersuasive. Plaintiff asserts that the trial court required her to produce evidence of defendants' gross negligence, despite the fact defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(8), neither of which require documentary evidence to support or oppose the motion. Plaintiff, however, mischaracterizes the record.

During the hearing, while the trial court was giving its reasoning for granting the motion, plaintiff's counsel interjected, asking if he could give the court an example of how defendants' conduct could amount to gross negligence. Counsel cited the fact in *Greene* that there was a documented history of problems with dispatchers' audio and stated: "In this case, a very similar thing could have happened. They could have said, hey, you guys keep putting in the wrong addresses." Responding to this hypothetical, the trial court responded that plaintiff did not "provide[] the Court with anything that would support that potential theory." The trial court continued: "Where is the affidavit? Where is just the allegation? You haven't even really alleged that."

Thus, it is clear that plaintiff's argument that the trial court granted summary disposition because she did not produce an affidavit is demonstrably false. While it is true the trial court asked whether plaintiff had documentary evidence of the allegation—such as an affidavit—the court also questioned rhetorically whether the complaint even alleged such conduct (it did not). In other words, the trial court was merely asking plaintiff to produce something more than a mere hypothetical, which had no basis in evidence or factual allegation. Thus, the trial court did not err by employing the incorrect standard when deciding the motion.

In her last point on appeal, plaintiff contends the trial court erred when it granted summary disposition as such a decision was premature because discovery was not over. Plaintiff failed to preserve this argument because she did not raise it with the trial court below. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) ("[A] litigant must preserve an issue for appellate review by raising it in the trial court."). In addition, plaintiff failed to file an affidavit showing "that the facts necessary to support the party's position cannot be presented because the facts are known only to persons whose affidavits the party cannot procure." MCR 2.116(H)(1).

The court rules under which defendants moved for summary disposition did not require any party to present documentary evidence to support their arguments. See *RDM Holdings*, 281 Mich App at 687 (under MCR 2.116(C)(7), the Court "must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties"); *Maple Manor*, 333 Mich App at 163 ("The court considers only the pleadings, and it considers them in a light most favorable to the nonmoving party, accepting as true all well-pleaded factual allegations."). The purpose of defendants' motions was to test the sufficiency of the factual allegations in plaintiff's complaint. The trial court concluded the complaint did not contain factual allegations to support a theory of gross negligence and granted defendants' motions on that basis. Thus, the presence or lack of discovery was irrelevant to the trial court's decision.

Affirmed. Defendants, as the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Anica Letica
/s/ Michelle M. Rick